## W. H. PIERCE v. F. M. NICHOLS.

Decided April 29, 1908.

**Land Agent—Sale—Commission.**

Defendant authorized plaintiff to sell a tract of land at $20 per acre, agreeing to pay 5 percent commission, and also agreed to protect him in such commission in case the land was sold through any other agent to B., with whom plaintiff was negotiating. Afterwards defendant sold the land to B. for less. Held, that it was not necessary for plaintiff, suing for his commission, to allege or prove that defendant made the sale with intent to defraud plaintiff out of his commission, nor that he had procured B. as a purchaser ready and willing to take and pay for the land at $20. It was sufficient that plaintiff was the agent procuring the sale to be made, and at a price satisfactory to defendant.

Appeal from the County Court of McLennan County. Tried below before J. W. Cooke, Esq., Special County Judge.

*Tom M. Hamilton,* for appellant, cited: Newton v. Conness, 106 S. W., 892; Edwards v. Pike, 107 S. W., 586.

*J. E. Yantis,* for appellee, cited: Wilson v. Clark, 35 Texas Civ. App., 92; Graves v. Baines, 78 Texas, 92; Stringfellow v. Powers, 4 Texas Civ. App., 199; Bowser v. Field, 17 S. W., 45; Sallee v. McMurry, 88 S. W., 157; Hunton v. Marshall, 88 S. W., 963; 4 Am. & Eng. Enc. of Law (2d ed.), 977-8, and authorities cited; Cammack v. Rogers, 32 Texas Civ. App., 125; Texas & Pac. Ry. v. Donovan, 86 Texas, 379.

RICE, ASSOCIATE JUSTICE.—Appellee instituted this suit against appellant for the recovery of $450, claimed to be due him as commissions on a sale of land by appellant to one Barlow. It is alleged by appellee that appellant, being the owner of 480 acres of land situated in Haskell County, Texas, and being desirous of selling the same, entered into a contract with appellee who was a real estate agent, whereby he was authorized to sell the land at $20 per acre, agreeing to pay him therefor five percent commission on the amount for which the land should sell, to wit, $9600; and it was further alleged that appellant especially agreed with appellee that he would pay him five percent commission on said amount if he should sell or negotiate a sale of said land to one J. T. Barlow, and that the agreement to pay said five percent commission should appellee negotiate, induce, or bring about a sale of said land to said Barlow was in writing, executed and delivered by appellant to appellee, and was in substance as follows:

"Hallsburg, Texas, 12-10-'06.
"I agree to protect F. M. Nichols in his five percent commission against any agent who might sell my land in Haskell County to J. T. Barlow.                         "(Signed) W. H. Pierce."

That by the terms of said contract defendant gave to this plaintiff the exclusive agency so far as the sale to Barlow was concerned, and guaranteed and warranted to pay his said five percent commission in any event, even though any other agent or person should interfere or bring about the sale, by reason of the fact that the plaintiff was then, at the time of the execution of said contract, negotiating with said Barlow upon the subject of the sale to him of said land. It was further alleged that a few days after the execution of said contract, appellant sold and conveyed said tract of land to Barlow for the consideration of $9000, and said purchaser was procured by appellee, and under the terms of his contract aforesaid when said sale was made and completed, appellant became and was liable to appellee, under the terms of said contract, for the sum of $450.

Appellant answered by general demurrer and what was denominated a special exception, but in fact was only a general demurrer, a general denial and a plea of *non est factum* as to the execution of said written instrument.

There was a verdict and judgment for appellee for the amount claimed, from which this appeal is prosecuted.

The facts, briefly summarized, show that appellant owned 480 acres of land in Haskell County, Texas, which he desired to sell; that appellee was a real estate agent, and that on the 4th day of December, 1906, he met J. T. Barlow in Temple, whom he had known for many years, and who had listed with him another tract of land, and that Barlow, after telling him that he wanted to withdraw his land from the market, inquired of appellee if he knew who owned the 480 acre tract of land situated near the town of Haskell, Texas, describing it, saying that he wanted to buy it and would pay $20 per acre for it, but did not know who the owner was, stating to appellee that he would pay him a commission if he would find out the owner for him. Appellee told him that he thought he knew the owner and would try and find out and let him know. On the same evening appellee wrote appellant, asking him if he still owned a certain tract of land in Haskell County, describing same, and also asked him if he would sell it, and what he would allow him as commission for selling the same. Whereupon appellant replied by letter next day, stating that he owned the land, that he wanted to sell it, and that he asked $20 per acre for it and that he would allow appellee five percent commission. Upon receipt of this letter appellee wrote to Barlow, telling him that appellant would take $20 per acre for the land, enclosing him the letter that he had received from Pierce, asking him to return the same, that the next day he wired Barlow in regard to the matter, and not hearing from him, he, within a few days thereafter, put in a long distance telephone call for him; that late in the afternoon of the same day someone answered the telephone and upon his asking if that was Barlow, the phone was dropped and he got no answer. Suspecting that Barlow was trying to buy the land directly from appellant, or through some other agent, he went to the home of appellant in McLennan County where he met appellant and asked him if he had heard anything from Barlow or from one Johnson, a land agent of Haskell County, concerning the sale of the land, and appellant stated that he

heard from neither one of them. He then stated to appellant what he had done in the premises towards communicating with Barlow relative to the sale, telling him that he believed that Barlow was trying to beat him out of his commissions, to which statement appellant assented, and assured appellee that he expected to pay him a commission for the sale, and that he regarded Barlow as appellee's customer. Whereupon appellee asked him if he would protect or guarantee him against the sale of said land made by any other agent. Being told that he would, appellee then prepared the instrument set out in the petition, which was signed by appellant.

Some eight or ten days thereafter, it appears from the evidence that appellant, without any notification to appellee, went in person to Haskell, Texas, and made a sale of said land to said Barlow for $9000; that although appellee wrote asking appellant to whom he had sold the land, appellant refused to tell him. It appears that Barlow and appellant had exchanged communications with each other during the interval between the period of time when appellee visited appellant at his home and the time of the sale. Appellant refused upon demand by appellee to pay him commissions upon said sale. Barlow testified that when he talked with appellee in Temple he did not know the address of Pierce, and that after he saw appellee he received a letter from him and also a telegram, neither of which he answered; that he also received appellant's letter, written to appellee, which he had lost; that the letter was to the effect that appellant would take $20 per acre for the land, and authorized appellee to sell the same at that price, agreeing to pay him a commission of five percent for selling the same; that after receiving the letters and telegram from appellee he wrote appellant, offering to give him $9000 for the land, stating that he would not buy the land from an agent at all, and that he need not refer him to an agent; that his only reason for doing this was that he wanted to save the real estate agent's commission on the land.

There was some contradiction between appellant and appellee as to the terms of the sale and the time within which it should be effected, as well as to the execution by appellant of the written guaranty of appellee's commissions set out in the pleadings; and also some contradiction in the evidence between appellee and Barlow in relation to the amount that Barlow stated he was willing to pay for the land; but these matters have been resolved by the finding of the jury in favor of appellee, and we think the evidence sufficient to sutain the verdict. It was not denied, however, on the part of appellant that he had authorized appellee to sell the land for the price of $20 per acre, and it was admitted that he had sold the land in person to Barlow for $9000, after listing the same with appellee. It was also shown that he had paid to Johnson and Davis, land agents at Haskell, $150 as commission for said sale, having first been threatened by suit if he refused to do so, they claiming to have also been instrumental in effecting said sale.

Appellant urges by his first assignment of error that the court erred in overruling the demurrer to plaintiff's petition, insisting, in effect, by his propositions thereunder, that where the land was listed as with appellee in this case for sale at a certain price, with written guaranty

for the payment of commissions, if sold by any other agent to a certain proposed · purchaser, that the petition was defective where it alleges a sale by the appellant to the proposed purchaser for a less amount than the agent was authorized to receive, and was also defective in failing to state that such sale was made in fraud of the rights of appellee, and also in failing to allege that the plaintiff ever procured or produced a purchaser able and willing to pay the amount for which the land was listed. ·

We think the petition is sufficient and is not open to the objections urged against it. It alleges the creation of a definite agency for the sale of the land, and further alleges that the owner authorized the plaintiff to sell the same for a definite price, agreeing to pay him a certain commission therefor, and further alleged a special agreement to pay five percent commission on the amount of said sale, if the agent should sell or negotiate a sale to a certain proposed purchaser and that the payment of said commission if the plaintiff should negotiate, induce or bring about a sale of said land to said proposed purchaser was guaranteed in writing, setting forth the same. It likewise alleges that a few days after the execution of said contract the defendant himself sold and conveyed the land to the proposed purchaser for a certain consideration, and that said purchaser was procured by the plaintiff under the terms of the contract, as pleaded, whereby defendant incurred an obligation to pay the commissions upon said sale as made.

We do not think that it was necessary in order for the plaintiff to recover that he should allege that the defendant made the sale with evil intent, or for the purpose of defrauding the plaintiff; nor was it necessary, in our judgment, to allege that the purchaser so procured by the plaintiff was ready, able and willing to pay for the land, because in order to create liability for the commissions under the contract as pleaded, it was only necessary for plaintiff to show that he either sold the land, or that he negotiated, induced or brought about a sale of the same to the proposed purchaser. And especially is this true where, as in this case, the appellant by his own wrongful act prevented the carrying out of the contract on the part of appellee by the sale himself of the land to the proposed purchaser. We think that he can not be heard to complain of the failure to allege that the proposed purchaser was able, ready and willing to pay for the land where he accepted the purchaser with whom the agent was negotiating and made the sale himself. In cases where the agent had produced a purchaser to whom the owner refused to sell, in order for him to recover it is uniformly held that he must allege and show that the purchaser so tendered by the agent was ready, able and willing to consummate the purchase at the price and upon the terms and conditions named; but in the case at bar no such allegation is necessary for the reasons heretofore stated.

It has been said that "the broker must also show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his principal." It is likewise said: "It is not necessary that the broker should personally have conducted the negotiation between his principal and the purchaser, or that he

should have been present when the bargain is completed, or even that the principal should at the time have known that the purchaser was found by the broker. It is indispensable, but it is also sufficient, that his efforts were the procuring cause of the sale; that through his agency the purchaser was brought into communication with the seller, although the parties then negotiated in person. His efforts may have been slight, but if they brought about the desired result no more could be asked; and their operations may have been circuitous, but if the purchase was the natural and proximate result of his endeavors, it is sufficient. The law prescribes no particular method of procedure, nor has it any other standard by which to measure exertion in such a case than the result attained." (Mechem on Agency, sec. 965-6.) "Unless the principal has expressly waived that right he is at perfect liberty to sell the property by his own efforts, notwithstanding the employment of the broker; and in case of such a sale he will not be liable to the broker for. commissions, if the broker's efforts were not in fact the procuring cause of the sale. But the principal can not, when the broker's efforts have resulted in negotiations for a sale, step in and by taking the matter into his own hands and completing the sale, escape liability to the broker." (Id., sec. 967.)

In Keys v. Johnson, 68 Pa. St., 42, Judge Sharswood, delivering the opinion of the court, said: "Brokers are persons whose business it is to bring buyer and seller together; they need have nothing to do with the negotiation of the bargain. A broker becomes entitled to his commissions whenever he procures for his principal a party with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner. He must establish his employment as a broker, either by previous authority or by acceptance of his agency and the adoption of his acts, and also must prove that his agency was the procuring cause of the sale; and when being duly authorized to sell property at private sale, he has commenced a negotiation with the purchaser, the owner can not, while such negotiation is pending, take it into his own hands and complete it, either at or below the price first limited, and then refuse to pay the commissions." "If vendors were permitted," said Woodruff, J., "to employ brokers to look up purchasers, and call the attention of buyers to property which they desired to sell, limiting them as to the terms of sale, and then while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into the market and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing; gross injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers who were in reality procured by the efforts of the agent."

In Graves v. Bains, 78 Texas, 94, it is said: "It has been held that the agent must be the efficient cause of the sale to entitle him to his commissions." It is likewise held that if the agent is the procuring cause, he is entitled to compensation, citing Stewart v. Mather,

32 Wis., 344, and Sussdorff v. Schmidt, 55 N. Y., 319. In the latter case it is said that if the purchaser is found by the broker's efforts and through his instrumentality, he is entitled to compensation, although the owner negotiates the sale himself; nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such cases it must appear that the purchaser was induced to apply to the owner through the means employed by the broker. And, again, if the broker was the producing cause of the sale, his right to compensation would not be affected by the circumstance that the defendants were ignorant of it at the time. It is also said, quoting from Stewart v. Mather, supra, that "where the price or terms of the sale are fixed by the seller in accordance with which the broker undertakes to produce a purchaser, yet if upon procurement of the broker a purchaser comes with whom the seller negotiates, and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or otherwise changes the terms of the sale as proposed to the broker, so that the sale is consummated, or terms or conditions offered which the party proposing to buy is ready and agrees to accept, then in either such case the broker will be entitled to his commissions." (See also Wilson v. Clark, 35 Texas Civ. App., 92; Stringfellow v. Powers, 4 Texas Civ. App., 199; Bowser v. Field, 17 S. W., 45; Sallee v. McMurry, 88 S. W., 157; Hunton v. Marshall, 88 S. W., 963; Vol. 4 Am. & Eng. Ency. Law, 2d ed., pp. 977-8, and authorities there cited.)

Appellant's second assignment of error, complaining of the action of the trial court in refusing to give a peremptory instruction in favor of the defendant, is overruled. It is never incumbent upon the trial court to instruct a verdict in behalf of either side where the evidence presents an issue for the determination of the jury.

By his third assignment of error appellant contends that the court erred in overruling the defendant's motion for a new trial, and in refusing to set aside the verdict and judgment, because the cause of action alleged by plaintiff was not sustained by the evidence. This assignment is overruled. We think the evidence is amply sufficient to sustain the verdict. (Graves v. Bains, 78 Texas, 92, and authorities there cited.)

Finding no error in the proceedings of the trial court, the judgment is affirmed.

*Affirmed.*