MARTIN v. JEFFRIES.  (No. 7220.)

(Court of Civil Appeals of Texas. Dallas. Dec. 12, 1914.)

1. BROKERS (§ 53*) — COMMISSIONS — WHEN EARNED.

A broker, employed to procure a purchaser of real estate for a specified price within a specified time, who procures a customer to whom the owner, within the specified time, sells for a less price, is entitled to compensation, provided he was the procuring cause of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

2. BROKERS (§ 44*) — COMMISSIONS — WHEN EARNED.

An owner who employs a broker to procure a purchaser of real estate, but not for any specified time, may terminate the agency at any time before consummation, without incurring liability, provided he acts in good faith and not to escape payment of commissions earned.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 45; Dec. Dig. § 44.*]

3. BROKERS (§ 82*)—COMMISSIONS—ACTIONS—PETITION—SUFFICIENCY.

A petition, in a broker's action for compensation, which alleges a contract of employment to procure a purchaser of real estate for a specified price within a specified time, and which

alleges that he procured a customer who refused to pay the price, but that subsequently the owner sold to him for a less price, presents the issue that the broker was the procuring cause of the sale, and supports a judgment for the reasonable value of the services.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

4. BROKERS (§ 82*)—COMMISSIONS—ACTIONS— PETITION—SUFFICIENCY.

A petition, in a broker's action for compensation, which alleges his employment to procure a purchaser within a specified time for a specified price, and which avers that he procured a customer refusing to pay the price, and which states that within the specified time the owner sold the land to the customer to deprive the broker of his commission, and that by reason of his procuring the customer the broker could recover reasonable compensation for his services, states a cause of action as against a general demurrer, and entitles the broker, on proper proof, to recover the reasonable value of his services, though his right to compensation under the contract is contingent on a sale for the specified price.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

5. BROKERS (§ 84*)—COMPENSATION—REASONABLE VALUE OF SERVICES—EVIDENCE.

A broker, to recover the reasonable value of his services in procuring a customer to whom the owner sold the land at a price less than that fixed in the contract employing the broker, must show the reasonable value of his services.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105; Dec. Dig. § 84.*]

Appeal from Hill County Court; J. D. Stephenson, Judge.

Action by J. E. Jeffries against C. D. Martin. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 153 S. W. 658.

Shurtleff & Cummings, of Hillsboro, and Chas. L. Black, of Austin, for appellant. J. E. Clarke, of Hillsboro, for appellee.

TALBOT, J. J. E. Jeffries brought this suit against the appellant, C. D. Martin, to recover, upon an alleged verbal contract, the sum of $500 for certain services charged to have been rendered for appellant as a real estate broker, or to recover what said services were reasonably worth. It is alleged: That plaintiff was a real estate agent and broker, engaged in the business of buying and selling land on commission. That on or about the 13th day of July, 1911, defendant placed with plaintiff to sell as his (defendant's) agent a certain tract of land, consisting of about 125 acres, the same being a farm and improvements thereon, in Hill and Navarro counties, Tex., a part of the Navarro county school land, known as the John Shaffer farm. That plaintiff and defendant entered into a verbal contract, by the terms of which it was agreed by and between plaintiff and defendant that plaintiff should have until November 14, 1911, to procure a purchaser for said land, at and for the price of $100 per acre, making an aggregate of $12,500, and if plaintiff should procure a purchaser for

said land, and sell, or cause the same to be sold, at and for the said sum of $100 per acre during the life of said contract, that he, plaintiff, should receive, as commission for making said sale and causing a sale to be made, 4 per cent. of the total for which said land should be sold by plaintiff under the terms so agreed upon. That shortly after said land and premises were placed with him for sale, plaintiff entered into negotiations with one Earnest Dixon for the sale of said land. That he took said Dixon to said land and showed it to him, endeavored to sell the same to said Dixon for $100 per acre, and that the said Dixon offered plaintiff $97.50 per acre for said land, but that plaintiff refused to sell the same for said sum, but demanded the sum of $100 per acre for said land. That thereafter, defendant knowing that plaintiff was negotiating with the said Dixon for the sale of said land, and after plaintiff had carried the said Dixon to see said premises, the said defendant sold the land and premises to the said Dixon, for the sum of $96 per acre. That defendant made a contract in writing for the sale of said land on or about ——— day of July, 1911, with the full knowledge that plaintiff had procured the said Dixon to buy said land, and on, to wit, the ——— day of January, 1913, executed to the said Dixon his deed of conveyance, conveying the said land in pursuance of said contract of sale. That notwithstanding his contract with defendant to sell said land, and to procure a purchaser therefor for the sum of $100 per acre, the said defendant, for the purpose of defeating this plaintiff out of his commissions for the sale of said land, deprived this plaintiff of the opportunity under his said contract with defendant to sell said land, by selling the same himself to the said Dixon, whom plaintiff had procured as a purchaser, whereby the defendant became liable and bound to pay to plaintiff his said commission under said contract, which he alleges is $500, the said 4 per cent. of $12,500, the price at which said land was listed with plaintiff for sale as aforesaid. Plaintiff pleads in the alternative that by reason of his procuring the said purchaser, to whom the defendant sold the said premises, plaintiff is entitled to reasonable compensation for his said services, which he alleges is 4 per cent. of the price for which the defendant sold said land, and that defendant sold said land for $12,000. That the defendant became liable and promised to pay him the said sum of $480. That, though long since due and often demanded, defendant has refused, and still refuses, to pay plaintiff the said sum of $500, or the said sum of $480, or any part thereof. Plaintiff prayed that upon final hearing he have judgment for $500, or in the alternative that he have judgment for $480, as reasonable compensation for his services in procuring a

sale of defendant's lands. The defendant answered by general demurrer, a general denial, and specially: (1) That at the time he sold the property in question to Dixon he was acting in good faith, believing that J. P. Neal had caused the said Dixon to enter into the said trade; (2) that the said Neal was in fact the procuring cause of the trade being consummated, and that the services rendered by plaintiff in closing the trade were of no value to the defendant. The case was submitted to a jury on special issues, and upon their findings judgment was rendered in favor of the plaintiff for the sum of $250.

[1-3] The first assignment of error is that: "Appellee's petition fails to state a cause of action, and is insufficient in law to support the judgment rendered in favor of the appellee, for the reason that it appears from said petition, in effect, that appellant agreed to pay appellee a 4 per cent. commission only in the event appellee should procure a purchaser ready, willing, and able to pay $100 per acre for the land, and there is no allegation that any such a purchaser was ever procured by the appellee, and no allegation that the act of the appellant in selling the land to Dixon for $96 per acre prevented the appellee from selling the same at $100."

Appellant urges two propositions under this assignment. The first is that under the allegations of appellee's petition he was entitled to no commission unless he procured a purchaser ready, willing, and able to pay $100 per acre for the 125 acres of land; and the second is substantially the same as the assignment itself, and asserts that the petition presents no cause of action for any character of relief. The record fails to show that a demurrer, challenging the sufficiency of appellee's pleadings on the grounds set out in the foregoing assignment and propositions of appellant, was present and acted upon in the trial court, nor does it appear that the alleged insufficiency of the plaintiff's pleadings to support the judgment was made a ground for a new trial in the lower court, but is presented for the first time by the above assignment of error found in appellant's brief. Appellant asserts, however, that the sufficiency of appellee's pleading to support the judgment rendered is a fundamental question, that may be reviewed on appeal, though not assigned in the court below, and we believe this is correct. In support of these propositions appellant's counsel argues that the legal effect of the contract alleged by appellee is that appellant did not agree to pay a 4 per cent. commission for a purchaser that appellee might find who might be willing to purchase the land at less than $100 per acre, but agreed to pay that commission in the event a purchaser should be found who was willing to pay $100 per acre. In other words, his interpretation of the contract pleaded is that it is a contingent or conditional one, whereby the parties agreed that, if no purchaser was found by appellee who was ready, willing, and able to pay $100 per acre for the land, appellant would owe appellee no commission; that the law is well settled that in a suit on

such a contract the plaintiff must allege performance in order to recover on the contract, or if he bases his right to recover on quantum meruit he must prove that if he had not been prevented by the defendant he would have performed the contract; therefore the appellee's petition is fatally defective, for the reason that it does not allege the kind of purchaser required by the contract was ever found, or that appellee was prevented by appellant from performing the contract. That this is a correct interpretation of the contract alleged may be doubted, or, if correct, the statement of the law as applicable thereto under the decisions of this state may be questioned.

The position of appellant, that when the contract for commission is a conditional or contingent one the broker cannot recover upon the express contract unless he brings himself within such condition, is supported by the recent case of Hughes & Thurman v. Dodd, 164 Mo. App. 454, 146 S. W. 446, and perhaps other cases cited by him; but the plaintiff's right in that case to recover on quantum meruit does not seem to have been raised by the pleadings and discussed by the court. However, it is difficult to distinguish the instant case in principle from McDonald v. Cabiness, 98 S. W. 943, Id., 100 Tex. 615, 102 S. W. 721, Pierce v. Nichols, 50 Tex. Civ. App. 443, 110 S. W. 206, and Graves v. Bains, 78 Tex. 94, 14 S. W. 256, cases decided by our own courts. In Pierce v. Nichols, supra, it was held that the plaintiff's petition alleged the creation of an agency for the sale of land, that the defendant authorized plaintiff to sell the land for a certain amount, namely, $9,-600, agreeing to pay him a 5 per cent. commission therefor; that defendant made a special agreement to pay him such commission if plaintiff should sell or negotiate a sale to a man named Barlow for said amount; that a few days thereafter defendant himself sold and conveyed the land to Barlow for a less consideration; and that said purchaser was procured by plaintiff, acting under the contract. And the court held that the petition stated a cause of action, without any allegation that the defendant made the sale with evil intent, or for the purpose of defrauding the plaintiff, and without any allegation that the plaintiff produced a customer ready, able, and willing to pay the amount of $9,600. In discussing the question the Court of Civil Appeals, speaking through Associate Justice Rice, said:

"It was not necessary to allege that the purchaser procured by the plaintiff was ready, able, and willing to pay for the land, because, in order to create liability for the commissions under the contract as pleaded, it was only necessary for the plaintiff to show that he either sold the land, or that he negotiated, induced, or brought about a sale of the same to the proposed purchaser. And especially is this true where, as in this case, the appellant by his own wrongful act prevented the carrying out of the contract on the part of appellee by the sale himself of the land to the proposed purchaser. We think that

he cannot be heard to complain of the failure to allege that the proposed purchaser was able, ready, and willing to pay for the land when he accepted the purchaser with whom the agent was negotiating and made the sale himself."

This is but the declaration of the just and salutary rule that the principal cannot, when the broker's efforts have resulted in negotiations for a sale, step in and by taking the matter into his own hands and completing the sale, either at or below the price stipulated, escape liability to the broker. The reason of the rule is well expressed in the following language:

"If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to property which they desired to sell, limiting them as to the terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services, and expenses of the broker in bringing the property into the market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing, gross injustice would be done, every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent."

In McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721, the proposition was made and urged in the Supreme Court that:

"The Court of Civil Appeals erred in affirming the judgment of the lower court, which was rendered upon an implied contract, or quantum meruit, when in fact the trial court found that there was an express contract pleaded and proven, which contract provided that, if a sale was made upon a stated price and terms, then the agent was to receive as his commission all the said timber sold for above a certain price, whereas the agent did not sell the timber according to his contract with the one defendant, and there was no evidence to show that the purchaser was ready, able, and willing to purchase upon the terms of the broker's contract of employment."

It was alleged and proved in that case that the plaintiff made a contract with McDonald in which the latter agreed that, if the plaintiff would procure a purchaser for the timber on certain lands at the price of not less than $3.25 per acre, upon the terms of one-fourth in cash and the balance in one, two, three, and four years, he would give him all that the timber should sell for over that price. It was also shown that the plaintiff, Cabiness, procured a purchaser at the price of $50,000, which was nearly $7,000 more than the amount would have come to at $3.25 per acre, but McDonald stepped in and completed the sale himself and refused to compensate Cabiness for his services. The Supreme Court, in refusing to sustain the above proposition, urged by McDonald, said:

"Now, if McDonald had sold the timber upon the terms agreed upon with plaintiff, it is clear that the latter would have been entitled to the excess over the lowest price stipulated in the agreement. McDonald having changed the terms, and the plaintiff having been, as was found by the court, the procuring cause of the sale, he was clearly entitled to something—if not to the amount the timber sold for over the price

allowed by McDonald in his contract, then to the reasonable value of his services."

The facts in Cabiness' Case are fully stated in the opinion of the Court of Civil Appeals published in 98 S. W. 943, and that court held that, the plaintiff having asked for reasonable compensation for his services, he was entitled to be compensated on that basis. The appellant, McDonald, insisted in the Court of Civil Appeals that:

"Where there is a special contract pleaded, and the compensation for which the contract is made is clearly expressed, and that contract fails or is not performed by the party entitled to the compensation, there can be no implied contract by virtue of which the plaintiff can recover from the other party on a quantum meruit."

This contention was not sustained, and the court in expressing its nonconcurrence said:

"This proposition would go so far as to authorize the owner to utilize his agent's services without compensation, even though the agent had expended much time, labor, and money toward the fulfillment of his contract, and had even brought it near the point of success. Such a rule would be fraught with great hardship and injustice to brokers."

It has also been held in this state, in effect, that the owner cannot escape liability where he accepts a purchaser procured by the agent, even though at a sum and upon terms which the owner would not have been bound to accept under the agent's contract of employment, and that although the owner might have the right, notwithstanding the agency of the broker, to sell the property and terminate the agent's right to compensation, such right could not be exercised for the purpose of defeating the agent, and that, for a sale by the owner to terminate the agent's right to compensation, it must be made to some other than a purchaser procured by the agent. McDonald v. Cabiness, supra. A little differently stated, the principle is that, where the owner has not contracted to employ the broker for any specified period of time, he has the right to terminate the agency at any time before it is consummated, without incurring any liability, provided he acts in good faith, and not for the purpose of escaping the payment of commissions virtually earned. Branch v. Moore, 84 Ark. 462, 105 S. W. 1178, 120 Am. St. Rep. 78; Gottschalk v. Jennings, 1 La. Ann. 5, 45 Am. Dec. 70.

The broker in the case at bar had until November 14, 1911, to consummate a sale of the owner's land. So that the dominant idea pervading all of our decisions on the subject seems to be that if the owner of land places it in the hands of a broker for sale, and stipulates that he will pay the broker a commission for his services if he sells for a certain sum, and the owner thereafter sells the land to a customer of the broker for the price stipulated, or for a less price, the broker, *if he was the procuring cause of the sale*, will be entitled to recover at least what his services are reasonably worth. We

doubt, as hereinbefore indicated, the correctness of appellant's contention to the effect that "appellee alleges a contract whereby the payment of any commission to him was conditional upon the procuring of a purchaser ready, willing, and able to pay $100 per acre for the land," and that as he failed to allege the procurement of such a purchaser he was not entitled to recover anything. The allegations of his petition are, it seems to us, sufficient to present the issue that he was the procuring cause of the sale of appellant's land to Dixon, and sufficient, under our decisions, to support a judgment for what his services were reasonably worth.

[4] But appellee alleges, in substance, not only that he contracted with appellant to sell his land at and for the stipulated price of $100 per acre, and that if he should procure a purchaser and sell or cause the same to be sold for that price he should receive a commission of 4 per cent. of the total amount for which said land should be sold, but that by the terms of the contract entered into between him and appellant he was to have until November 14, 1911, to sell the land, and that, in violation of the contract, appellant, in July, 1911, knowing that appellee was negotiating with the said Dixon for the sale of the land, and, after appellee had carried Dixon to see the land, entered into a written contract with the said Dixon for the sale of said land, with full knowledge that appellee had procured the said Dixon to buy the land at and for the sum of $96 per acre, and later conveyed the same to him at that price by deed duly executed; that appellant made this contract and conveyance for the purpose of depriving appellee of his commissions; and that the effect of the same was to deprive him of an opportunity to sell the land. Appellee further alleged that by reason of his procuring the said purchaser, to whom appellant sold the land, he was entitled to reasonable compensation for his services, and prayed in alternative for the same. It is thus seen that appellee, according to the contract alleged by him, had until November 14, 1911, to make a sale of the land in question at the price stipulated, and that appellant, before the expiration of the time granted, interfered and sold the land himself to appellee's customer. These allegations charge, in effect, it occurs to us, that the act of appellant in selling the land to Dixon prevented him from selling the same under the terms of the contract, and satisfy the rule, contended for by appellant, that in a suit of this character, when the plaintiff seeks to recover on quantum meruit, he must show that if he had not been prevented by the defendant he would have performed the contract. The petition at least is not, we think, subject to a general demurrer, and hence, in the absence of a special demurrer, presents a case entitling appellee to recover, upon proper proof, the reasonable value of his services, even though it should be admitted that his right to compensation under the terms of the contract was contingent upon a sale of the land by him for $100 per acre, and that under our decisions he would not be entitled to recover under such a contract anything unless he alleged and proved that he was prevented from performing the contract by the acts of appellant.

[5] But the judgment of the court below must be reversed and the cause remanded for the reason stated in the second proposition urged by appellant under his fifth assignment, to the effect that there was no evidence to support a recovery by appellee upon a quantum meruit, in that there was no evidence introduced tending to show what was the reasonable value of appellee's alleged services. The verdict and judgment was evidently rendered upon the theory that the appellee was entitled to recover upon a quantum meruit, but we find upon a reading of the statement of facts that there is absolutely no evidence whatever showing or tending to show the value of the services charged to have been rendered by appellee. Hence the judgment appealed from is without any evidence to sustain it, and it must be set aside.

It is not believed that the other assignments point out reversible error, and they need not be discussed. The jury's answer to the second question submitted to them, as disclosed by the sixth assignment, is entirely too indefinite, standing alone, to show who they concluded was the procuring cause of the sale of the land to Dixon; but, when said question and answer are considered in connection with the third question submitted and the answer thereto, there can be no doubt as to their finding in this respect. The question, however, is not likely to occur on another trial.

For the reason indicated, the judgment is reversed, and the cause remanded.