HODDE et al. v. MALONE REAL ESTATE CO. (No. 7696.)

(Court of Civil Appeals of Texas. Dallas. April 14, 1917. On Rehearing, June 23, 1917.)

1. APPEAL AND ERROR ⬅➡930(1)—REVIEW—EVIDENCE.

Where verdict and judgment were for plaintiff, the evidence must be regarded on appeal in the light of the facts deducible from plaintiff's testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755, 3756, 3758.]

2. BROKERS ⬅➡86(8)—REALTY BROKER—EMPLOYMENT—SUFFICIENCY OF EVIDENCE.

In an action for commission by a firm of realty brokers, evidence held to show that defendants employed the firm to sell their land at $75 an acre, and agreed to pay 5 per cent. commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 117.]

3. BROKERS ⬅➡54—REALTY BROKER—RIGHT TO COMMISSION.

In cases where there is not an actual sale and purchase of land placed with a broker within the time agreed upon, if time is fixed, the broker may not recover commission unless he produced a purchaser ready, able, and willing to purchase on the terms specified by the owner.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75-81.]

4. BROKERS ⬅➡57(2)—REALTY BROKER—RIGHT TO COMMISSION.

A realty broker is entitled to commission as the efficient cause of a sale when it is consummated by the owner pending the broker's negotiations with a purchaser produced by his efforts or through him on terms other than specified by the owner, if the change in the terms was due to the owner's voluntary act.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72.]

5. BROKERS ⬅➡82(4)—PLEADING—EVIDENCE.

In an action for commission by a firm of realty brokers, the pleading that defendant owners voluntarily consummated a sale, with a purchaser produced by plaintiff firm, on terms dissimilar to those specified by the owners, though general, was sufficient to permit the introduction of testimony in the absence of demurrer raising any issue.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 103.]

6. BROKERS ⬅➡86(6)—REALTY BROKERS—RIGHT TO COMMISSION—PRODUCTION OF PURCHASER—SUFFICIENCY OF EVIDENCE.

In an action for commission by a firm of realty brokers, evidence held to support finding that the firm produced a purchaser with whom defendant owners negotiated a sale induced by their act in voluntarily reducing the price.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 117.]

7. EVIDENCE ⬅➡588—CONFLICTING EVIDENCE—DUTY OF JURY TO RECONCILE.

The duty to reconcile conflicts in the evidence, or to adopt one or the other theory shown by the evidence, is placed on the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Witnesses, Cent. Dig. § 1164.]

8. WITNESSES ⬅➡331½—IMPEACHMENT.

In an action for commission by a firm of realty brokers, where the buyer of the land from defendant owners stated positively that neither plaintiff firm nor another agent, with whom they acted, had discussed the purchase of defendants' land with him before his negotiation had directly with defendant owners, a member of plaintiff firm was properly permitted, to impeach the witness, to state that the buyers did at the time and place mentioned admit that the other real estate agent was the first to offer them the land.

9. BROKERS ⬅➡57(2) — REALTY BROKER — RIGHT TO COMMISSION—AMOUNT.

A realty broker has earned and is entitled to his commissions according to his contract with the owner when he procures a purchaser with whom the owner, pending negotiations, directly makes a sale on terms dissimilar to those specified to the broker, but satisfactory to himself.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72.]

10. BROKERS ⬅➡81—ACTION FOR COMMISSION—PARTIES.

A realty broker who, though not a member of a firm of brokers, was commonly associated with them in sales, and entitled to an even division of a commission. sued for by the firm, if collected, was neither a necessary nor a proper party to the suit.

11. INTEREST ⬅➡38(1)—INTEREST ON JUDGMENT—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4981, all judgments not entered upon contracts ascertaining the rate of interest shall bear 6 per cent. per annum from and after their date, and a judgment for broker's commissions bearing 8 per cent. was erroneous.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 79, 80, 82.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by the Malone Real Estate Company against Henry Hodde and others. From a judgment for plaintiff, defendants appeal. Reformed and affirmed.

J. J. Averitte and Wear & Frazier, all of Hillsboro, for appellants. Geo. W. Dupree and H. G. Hart, both of Hillsboro, for appellee.

RASBURY, J. Appellee sued appellants, Henry Hodde, Henry Hodde, Jr., and Henry Reuy, alleging that about the middle of February, 1914, appellants listed with appellee, a firm of real estate brokers composed of J. W. Powell and J. M. Meader, 326 acres of land in Bosque county, and agreed if appellee should find a purchaser for the land to pay appellee as commissions 5 per cent. of the amount of the purchase price secured therefor, and that appellee, after negotiating with Brandies Bros., and after arranging a meeting of appellants with Brandies Bros., appellants thereafter sold the land so listed with appellee to Brandies Bros., as the result of the efforts of appellee in bringing the parties together. Appellee further pleaded that appellants, knowing that appellee expected to be remunerated for its services in that behalf, permitted and consented to it perform-

ing the service of securing a purchaser for their land, and accepted the fruits and advantages thereof by selling their land to the purchaser produced by appellee, and by reason whereof they became bound to pay appellee the reasonable value of the services rendered or 5 per cent. of the purchase price of said land. Prayer was for judgment for $1,100.25 and for general relief. Appellants' pleading, while specifically denying certain allegations of appellee's petition, was in effect, a general denial. There was trial, the case being submitted to the jury upon a general charge. Verdict was for appellee for $1,100.25, followed by similar judgment, from which this appeal is prosecuted.

[1] The first assignment of error complains of the refusal of the court to peremptorily instruct verdict for appellants. Under the assignment it is first urged that the evidence does not support the finding of the jury that appellants agreed to pay a commission for the sale of their land. The issue so raised requires an examination of the evidence, which by the well-settled rule must be regarded in the light of the facts deducible from the testimony of appellee, those essential being as follows: From the testimony of J. W. Powell, a member of appellee firm, it appears that J. M. Meader, a member of appellee firm, located at Malone, immediately preceding the time when appellee was employed by appellants, returned from Clifton, in Bosque county, where he had learned through one J. L. Profit, a real estate broker located there, that the appellants' land could be sold to Brandies Bros. by Profit, who was commonly associated with appellee firm in sales of property. Just about that time, which was the middle of February, 1914, appellants were in Malone, and at the solicitation of Powell listed their land with appellee to be sold for $75 per acre, appellants agreeing to pay 5 per cent. of the purchase price as commissions. Powell at the time advised appellants that the prospective purchaser was Brandies Bros. The week following the witness Powell, having occasion to visit the town of Womack, also in Bosque county, for the purpose of showing some land to another client, carried with him in the same automobile one of the Hoddes and Reuy, thinking he might at the same time sell appellants' land to Brandies Bros. After having visited Womack, and upon reaching Clifton the witness told appellants to call upon Brandies Bros. concerning the land. This they did, reporting that Brandies said he was not ready. The witness did not personally see Brandies Bros. while in Clifton, in fact, was unacquainted with them. The extent of his efforts to sell the land while there was to direct appellants to see Brandies Bros. in reference thereto.

From the evidence of the witness J. M. Meader it appears that about the middle of February, 1914, in the town of Malone, he informed appellants that he had been in communication with J. K. Profit, of Clifton, and thought he could sell appellants' land to Brandies Bros. for $75 an acre. He solicited authority from appellants to do so, to which appellants agreed. At the time appellants made the visit to Clifton with Powell witness, who had spent the preceding day in Clifton consulting with Profit concerning its sale to Brandies Bros., joined them at appellants' farm, which was passed in making the journey to Clifton, and returned with them to Clifton. During the journey witness advised appellants that Brandies Bros. were not then ready to buy the land, and requested the appellants "to go to Clifton and talk with them." This they did when they reached Clifton, and reported that Brandies Bros. were not ready to buy right then. Witness told them to "sit still" and he would sell it for $75 an acre. Appellant Henry Hodde called to see witness two or three times the week following the visit to Clifton and inquired how the trade was progressing. Each time witness advised Hodde that Profit had reported that Brandies Bros. said they were not yet ready to buy. Witness was unacquainted with the Brandies Bros. and never had any personal communication with them concerning appellants' lands.

From the testimony of the witness J. K. Profit it appears that about February 11 or 12, 1914, he received a letter from the witness Meader stating that appellants had listed their land with appellee, with whom Profit was associated. Profit at once went to Brandies Bros. and offered them the land for $75 an acre. Brandies Bros. said it was a little too much. A few days later he again discussed the matter with Brandies Bros., who again said the price was a little too much. Thereafter, when Meader, Powell, and appellants were in Clifton, he reported to them Brandies Bros'. attitude.

Appellant Henry Hodde, Jr., according to his testimony, did talk with Brandies Bros. during what he described as an accidental meeting when they were in Clifton, at which time he described the respective portions of the tract owned by each, the improvements thereon, and the character of the soil, and offered to sell to Brandies Bros. for $75 an acre. Brandies Bros. said they would love to buy it and for Hodde to see the other folks and drop him a letter. After Hodde returned home he at once wrote Brandies Bros. a letter in the German language, of which the following is a translation:

"Worthy Friend: As I promised to write you I will take this opportunity. I do not know whether old man Profit has already spoken with you or not about our farm which we bought of Dr. McNeil. The agents have not listed our farm, and if old man Profit comes to you and wants to sell you our farm, do not deal with him. And if you wish to buy our farm, we prefer to make the trade ourselves, and would sell it somewhat cheaper. It is not necessary that the agents should always get a commission out of it. You need not tell any one so that old man Profit might hear it again. I think we have a very pretty farm, for we have not many

stones on the whole place. It is only over on the west side in the pasture. I think we bought the best part from McNeil, and that is what all the renters say who live on the place. They think our places are worth at least five or ten dollars an acre more than the 430 acres which Dr. McNeil still owns. While we have on our 327 acres three valuable houses and three good barns, and on all our cultivated land not many stones, on the 430 acres are only two sets of houses and on the south and east are a good many stones. I think the prairie land that does not overflow in three years from now it will bring $100.00 an acre. Why, in the four years I have been in Hill county, I have seen land sell for $75.00 that one must pay $125.00 or $140.00 an acre for. I soon will have to close, for my letter will get too long. So if you really wish to buy a good farm, go and look well at ours and write me what you think it is worth, and what is the most you will give for the land. Please say nothing to old man Profit that I have written you, and make no trade with any of the agents who come from here about our lands. If you wish to buy, we would rather sell to you ourselves. Herewith will I close. Henry Hodde, Jr."

As a result of the negotiations between Brandies Bros. and appellants Brandies Bros. bought the land, paying therefor $67.50 per acre. Appellants refused to pay any commission to appellee.

The foregoing are the salient facts in the controversy tending to support the verdict of the jury. We have not attempted to recite the many and varied collateral facts and circumstances which might weaken or strengthen, modify, or shade the main facts, for the reason that none of them would necessarily reduce the maximum of the main facts comprehended in the verdict of the jury. Nor have we attempted to recite the salient facts deducible from appellants' testimony. They are irreconcilably in conflict with those arising on the testimony of appellee. We could not, nor is it our duty, to reconcile them.

[2] We now return to the contention that the facts stated will not support the finding that appellants agreed to pay appellee any sum of money to sell his land. The facts on that precise point speak for themselves, and do show, we think, according to the testimony of both Powell and Meader, that appellants employed appellee to sell their land at $75 per acre and to pay appellee as commission 5 per cent. of the purchase price thereof, and the verdict does in that respect find support in the evidence.

[3-6] But it is urged by appellants, and constitutes, we apprehend, their real contention, that in order to sustain the verdict and judgment it must appear from such facts that appellee produced a purchaser ready, willing, and able to purchase upon the terms and at the price specified, bound by enforceable contract to do so. The general and uniform rule, as we understand it, in cases where there is not an actual sale and purchase of the land, is that within the time agreed upon, if time is fixed, the broker may not recover his compensation unless it appears that by his efforts he produced a pur-

chaser ready, able, and willing to purchase the property upon the terms specified by his principal. We also understand that it is a further uniform and general rule that the broker is entitled to his compensation, and is held to be the efficient and procuring cause of the sale, when a sale is consummated by the principal, pending the broker's negotiations, with a purchaser produced by his efforts or through his instrumentality, upon terms other than specified by the contract, when it appears that the change in terms is due to the voluntary act of the principal. Graves v. Bains, 78 Tex. 92, 14 S. W. 256; Bellis v. Hann & Kendall, 157 S. W. 427; Goodwin v. Gunter (Sup.) 185 S. W. 295. No claim was made upon trial, nor is any made here, that appellee produced a purchaser at the contract price. The claim is that appellants voluntarily consummated a sale with the purchaser produced by appellee upon terms dissimilar to those specified, whereby they became liable to appellee under the rule stated for the agreed compensation. This contention, while generally pleaded, is sufficiently so to permit the introduction of testimony in the absence of demurrer raising any issue on the pleading. We observed in Bellis v. Hann & Kendall, following Graves v. Bains, both cited above, the rule relied on by appellee. The rule was also observed in Goodwin v. Gunter, supra, where it is said that in such cases the broker is entitled to the contract compensation, though it seems that in the present case a recovery was permitted for only 5 per cent. of the reduced purchase price. The facts arising upon the evidence are in our opinion sufficient to support the finding of the jury implied by their verdict that appellee produced a purchaser with whom appellants negotiated a sale induced by the act of appellants in voluntarily reducing the price. It is in effect undisputed that appellants, immediately following the time when appellee informed them that Brandies Bros. were the prospective purchaser and arranged the meeting of the parties in Clifton, secretly communicated with Brandies Bros., reducing the price of the land and urging him not to negotiate with the agents and to keep their negotiations secret. Certainly it cannot be said that there is no disputed issue of fact on that question.

Appellants rely on the case of Pryor v. Jolly, 91 Tex. 88, 40 S. W. 959. That case, it seems to us, is clearly distinguishable in its facts from the case at bar. From that case it appears that Pryor agreed to pay Jolly as commission $1 per head on all cattle accepted by one Holden at the price and upon the terms specified by Pryor. Holden agreed to such price and terms, but was never able to comply with them because unable to secure the necessary money. Jolly sued Pryor for his commission, and the court instructed the jury that, if Pryor could have enforced his contract at law against Holden,

then Jolly had earned his commission. Such instruction was obviously erroneous, since, as said by the court, it was Jolly's duty to secure a purchaser ready, willing, and able to take the cattle and pay the agreed price. He did not perform that duty when he secured a contract from the purchaser agreeing to do so, since the test was his ability to do so. The judge who wrote that opinion, in a later one distinguished it from such cases as the present one. Hancock v. Stacy, 103 Tex. 219, 227, 125 S. W. 884. Here, as we have said, the issue is not whether appellee secured a purchaser on the specified terms. On the contrary, the issue is that appellants voluntarily changed the specified terms and consummated with the purchaser produced by appellee another and different arrangement.

The second proposition urged under the first assignment of error is that the peremptory instruction should have been given because the preponderance of the testimony shows that appellee failed to secure a purchaser upon the terms specified. As we have said, it is not claimed that appellee secured a purchaser upon the terms agreed upon, but that appellants, pending appellee's negotiations with Brandies Bros., reduced the price and consummated the sale themselves, which is not denied. The only question then remaining to be determined was whether appellee produced the customer to whom appellants sold. We have already discussed the evidence on that issue and its weight. It is not, it occurs to us, a question of the preponderance thereof, but rather its conflicts.

[7] Wisely the duty of reconciling conflicts or adopting one or the other theory shown by the evidence is placed upon the jury, who can see and hear the witnesses and form a much clearer opinion of the weight or importance to be attached thereto than can members of this court from a perusal of same.

[8] The third assignment challenges the action of the court in admitting certain testimony. On cross-examination the witness Brandies, when asked if he did not, at Clifton, in the presence of J. K. Profit, J. M. Meader, and J. W. Powell, state that Profit was the first person to offer him the appellants' land, denied making such admission. Subsequently J. M. Meader was permitted, over the objection of appellants, to state that Brandies Bros. did, at the time and place mentioned, admit that Profit was the first to offer them the land. Appellants' claim is that evidence was hearsay, collateral, and prejudicial and an attempt to impeach the witness on an immaterial and collateral matter. We believe not. Brandies in his testimony in chief had stated positively that neither appellee nor Profit had discussed the purchase of appellants' land with him prior to the negotiation had directly with appellants. Such fact was obviously a controlling one. The effect of the admission testified to by Meader was to impeach him on that issue and was admissible by elementary rule.

[9] The sixth assignment of error complains of the action of the court in peremptorily directing the jury that if they found for appellee to assess the damage at 5 per cent. of the purchase price of the land. The court did so instruct the jury. There was no evidence in support of the issue other than the contract testified to by appellee's witnesses. We understand the court's action to be correct, however, on the theory that the broker has earned and is entitled to payment of his commissions according to the contract when he produces a purchaser with whom the owner, pending negotiations, directly makes a sale upon terms dissimilar to those specified, but satisfactory to himself. Goodwin v. Gunter, supra. The reason of the rule is stated in the case cited and those which it follows.

[10] The thirteenth assignment complains of the action of the court in authorizing a verdict for appellee, while by the evidence it appears that J. K. Profit was entitled to a portion of any sum recovered. It is shown by evidence which we have not stated heretofore that J. K. Profit, while not a member of appellee firm, was commonly associated with them in sales and was entitled to an even division of the commission sued for, if collected. This, in our opinion, made Profit neither a necessary nor a proper party. He was not entitled to recover against appellants on the contract appellee alleged, nor could he have recovered from appellee upon the contract with appellants. His remedy was against appellee upon an independent contract with it.

[11] The eighteenth and nineteenth assignments complain of the action of the court in entering judgment upon the verdict of the jury for 8 per cent. per annum interest from the date thereof. Article 4981, Vernon's Sayles' Civ. Stats., provides in effect, that all judgments when not entered upon contracts ascertaining the rate shall bear 6 per cent. per annum interest from and after the date thereof. The judgment in the present case, not being upon such a contract, should have borne the specified rate of 6 per cent., and is erroneous in that respect.

The second, fourth, fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, and seventeenth assignments raise in various ways issues which have been determined by conclusions reached in consideration of other assignments, and they will therefore be overruled.

The judgment of the trial court will be corrected so as to provide for 6 per cent. per annum interest from its date, and as corrected will be affirmed.

Reformed and affirmed.

## On Rehearing.

TALBOT, J.   We have carefully considered the well-prepared motion for rehearing, together with the forcible and courteous argument of counsel in connection therewith, and while we think the state of the evidence is such as would have supported a verdict for appellant, it cannot be said it will not support the verdict awarded appellee.   We believe the evidence, fairly considered, discloses a conflict, and if our conclusion in that respect is correct, then appellants were not entitled as matter of law to verdict.

It is also contended by appellants in their motion for rehearing that in Bellis v. Hann & Kendall, 157 S. W. 427, and in the instant case, we held that when, pending the broker's negotiations the principal consummates the sale with the purchaser produced by the broker, the latter is entitled to recover the contract compensation, and is not required to rely upon the rule of quantum meruit by alleging and proving the reasonable value of his services, and that such holding is in conflict with our holding in Martin v. Jeffries, 172 S. W. 151, which, in effect, holds that when the principal, pending the broker's negotiations, consummates the sale with the purchaser produced by the broker, the latter may only recover upon pleading and proof of the reasonable value of his services. · The point was not involved in Bellis v. Hann & Kendall, the sole issue being which of two brokers produced the purchaser, and as a consequence there is no conflict in that case and Martin v. Jeffries, supra.   And, if there is a conflict in the rule announced in the latter case and Goodwin v. Gunter (Sup.) 185 S. W. 295, which we followed in the instant case, then the reasons which may have actuated us in announcing the rule laid down in Martin v. Jeffries are without controlling force.   When Martin v. Jeffries was decided Goodwin v. Gunter, had not been decided, but when we decided the instant case it had been.

It is further urged by counsel that we reform our findings so as to show as a matter of fact that the appellants did not sell or attempt to sell the lands to Brandies Bros. at the reduced price until the appellees had unsuccessfully completed their negotiations.   It it urged that we do this because the Supreme Court is bound by our conclusions of fact.   To so reform our findings would be to hold that the evidence does not support the judgment, which we are unwilling to do for the reasons stated in our original opinion.   If there is no basis in the record for our holding, that issue can be presented to the Supreme Court in the same manner that the findings of the jury were presented to this court.

We have carefully considered the other grounds presented in the motion for rehearing, and conclude they furnish no grounds for changing our original views.

The motion for rehearing is overruled.