### R. C. DOBSON v. T. A. ZIMMERMAN.

Decided March 18, April 22, 1909.

**1.—Demurrer—Exceptions.**

Exceptions to the rulings of the court on demurrers are not properly preserved in bills of exception, and where so taken will not be considered, especially when such bills are filed more than 20 days after the adjournment of court.

**2.—Bills of Exceptions—Statement of Facts.**

Bills of exception to the admission of testimony can be preserved in the statement of facts; but in such case it is necessary that the statement should be filed within the time provided by law for the filing of bills of exception.

**3.—Vendor and Purchaser—Contract for Good Title.**

A contract by the vendor of land to convey perfect title was complied with by tender of a deed from the vendor, where he had good title in fact, and nothing of record cast a cloud thereon.

**4.—Same—Case Stated.**

A vendor who had purchased land after the death of his wife and with funds received from his father's estate was under no obligation, in order to comply with his contract to convey perfect title to a purchaser, to resort to the the probate or other court for a judgment determining that the heirs of the wife had no interest in such land.

ON MOTION FOR REHEARING.

**5.—Vendor and Purchaser—Damages.**

The proper measure of damages which the vendee may recover for breach of a contract to convey or make title to land is the amount he has paid as purchase money. It is only in cases where the vendor wilfully or fraudulently refuses to comply with his contract to convey that the vendee can recover for the loss of his bargain in addition to what he may have paid as purchase money; and where conveyance is tendered, the vendee can not, because of cloud or apparent imperfection of the title, refuse to accept it and sue for the loss of the bargain.

**6.—Agency—Stake Holder.**

A land agent who in negotiating a sale acted for the vendor only, but under the contract for sale received a deposit of earnest money from the vendee, which, upon the latter's demand, on claim that the title was imperfect, he refunded, could not be held in so doing to have acted solely as the agent of the vendor.

Appeal from the District Court of Glasscock County. Tried below before Hon. James L. Shepherd.

*A. J. Prichard,* for appellant.—The contract between the parties to this suit being unambiguous, oral evidence was not admissible for the purpose of explanation of nor as addition thereto and could not, under any circumstances, be admissible without some pleading by appellee, averring fraud, accident or mistake, in matter of expressing the mind of the parties or in matter of omission of part of the real agreement. Gonzales College v. McHugh, 37 Texas, 347; Burns Bros. v. Strong, 61 Texas, 555; Self v. King, 28 Texas, 552; Gulf C. & S. F. Ry. Co. v. Jones, 82 Texas, 156.

Appellee having placed with Gregg Bros. the sum of $500, which he designated as earnest money to close the sale to him and the contract having provided that this be forfeited to and vest in appellant if appellee breached the contract and in substance fixing said sum as the liquidated damages to appellant, appellee having so fixed the amount of damages can not now claim larger damages than that for which he became bound. Eakin v. Scott, 70 Texas, 442; Hoskins, v. Dougherty, 29 Texas Civ. App., 318; Pinkston v. Boyd, 43 Texas Civ. App., 568.

The contract in question stipulating that title to the land should

be good, or appellant would make it good, and appellant having executed deed in favor of appellee to the land and having proffered it to appellee after appellant's attorneys had passed upon it and pronounced it good and sufficient in conformity with the contract, the burden was upon appellee to establish the contention made by him that the deed so proffered to him would not vest good title, and that if he had accepted said deed so proffered it would not have vested in him good title to the land in question. Jackson v. Martin, 41 S. W., 837.

Appellee having taken Gregg Brothers into a trust relation and for his own advantage in matter of procuring said stakeholders to release his funds, thereby made them his agents to the extent that he is bound by statements they made to appellant in regard to the terms of withdrawal; and said agents having led appellant to believe the whole transaction was concluded and so believing having released Gregg Bros. from liability, appellee is bound thereby and had no rights he could lawfully and equitably urge against appellant for any breach or pretended breach of contract. 2 Pomeroy's Equity, secs. 801, 802.

*Jeff. D. Ayres,* for appellee.—A written instrument, where there is any doubt whatever of its meaning, may be read in the light of the surrounding circumstances relating to the subject matter, and parol evidence, consistent with the writing, may be used to ascertain the intention of the parties. Ginnuth v. Blankenship & Blake Co., 28 S. W., 828.

Parol evidence is admissible to prove a verbal contract collateral to and contemporaneous with a written contract, though it refer to the same subject matter, and may affect the rights of the parties under the written contract. Preston v. Breedlove, 36 Texas, 96; Nowlin v. Frichott, 11 Texas Civ. App., 445.

Appellee's measure of damages for breach of the contract by appellant was the difference between the contract price of the land, and its value at the time at which it should, under its terms, have been consummated. Tynan v. Dulling, 25 S. W., 465; 2 Benjamin on Sales, 1120.

The finding of the court that the contract of sale was not complied with, but was breached by the defendant; that no perfect title was offered by defendant to plaintiff for examination; and that plaintiff held himself ready to comply with his contract, is supported by the evidence. 2 Benjamin on Sales, sec. 1118; Kilgore v. N. W. T. Bap. Ed. Assn., 90 Texas, 148; Simpkins on Contracts and Sales, p. 249.

The stipulation in the contract was, the title to the property is to be perfect, or to be made perfect within the time; under this Zimmerman was entitled to demand a perfect and marketable title. Not one so threatened with adverse interests or claims of probable merit as to render it imperfect or unmarketable, and this perfect and marketable title should be shown by an abstract. Hollifield v. Landrum, 31 Texas Civ. App., 187.

The court having found in favor of plaintiff upon the material

issues, such finding being entitled to the same weight as the verdict of a jury, should not be disturbed. Stone v. Brown, 54 Texas, 335; DeBruhl v. Maas, 54 Texas, 473; 1 Green's Dig., V. 701, subd. (d) sec. 1029, 1030, and authorities cited.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted by the appellee against the appellant in the District Court of Glasscock County, to recover damages for the alleged breach of a contract to convey a certain tract of land. The case was tried before the court without a jury, resulting in a judgment in favor of the appellee for $960.00.

*Findings of Fact.*—The following are the facts as shown by the evidence introduced: The appellant, Dobson, owned a section of school land situated in Glasscock County not then fully paid out, which had been purchased from the State. In October, 1906, he and the appellee entered into an agreement by which appellant Dobson sold to the appellee, upon terms hereinafter stated, all the right that he had in the section of land mentioned. The written contract which evidences the terms of the agreement and upon which this suit is based, is as follows:

"$500.00.                     Garden City, Texas, October 24th, 1906.

Received of T. A. Zimmerman of the County of Jones, State of Texas, the sum of $500.00 earnest money, to close sale to himself, of the following described lot, tract or parcel of land, to wit: 640 acres of land, all of Survey No. 18, Block No. 34 Tsp. 3 South, situated in the County of Glasscock, State of Texas, from R. C. Dobson, of Glasscock County, Texas, acting by and through his duly authorized agents, Gregg Brothers, at Garden City, Texas, at a total sale price of $4,800.00 bonus, to be paid as follows, to wit: The sum of $2,500.00 cash, on or before the first day of January, 1907, when possession is to be given, the sum herein receipted for to be taken as a credit on said first payment and the execution and delivery by the said T. A. Zimmerman to the said R. C. Dobson, of six certain promissory vendor's lien notes, said notes are to be of even date with the deed transferring the property, and are to be of the principal sum of $383.33 each, and due and payable on or before one, two, three, four, five and six years from date respectively and to bear interest from date at the rate of 8 percent per annum from date until paid, payable at Garden City, Texas, $2,500.00 is to be paid as stated above upon the delivery of a proper deed, transferring the said property in accordance with the agreement herein. It is further understood that the title to said property is to be perfect or to be made perfect within a reasonable time from the date hereof, or the money is to be refunded to the said Zimmerman, the parties hereto are allowed until the first day of January, 1907, to consummate the details of this trade, and if the same are not consummated or finished by that time the earnest money is to be refunded, if the default of the said R. C. Dobson, whereupon the said Zimmerman, may then proceed to establish his rights according to law, but if the default be that of the said

Zimmerman, then the amount so received as earnest money is to be forfeited and at once to become the property of the said R. C. Dobson, and his agents, Gregg Brothers, are authorized to turn the same over to him less their commission and expenses incurred in the matter, and upon the said forfeiture being declared the said T. A. Zimmerman shall thereupon become released from any further liability by reason of this contract.

Witness our hands this 24th day of Oct., A. D., 1906.

Gregg Brothers, By Guion Gregg.

I accept the terms and conditions of the above contract and agree to abide by its terms.                                    R. C. Dobson."

It is further shown that Gregg Brothers, whose names appear signed to the foregoing instrument, were land agents and were instrumental in bringing the parties together and in the consummation of the deal above referred to. At or about the time this written contract was executed the appellee deposited with Gregg Brothers the $500.00 mentioned, and Dobson, the appellant, also executed, acknowledged and delivered to Gregg Brothers for the appellee a deed of general warranty conveying to the latter the land in controversy and described in the contract, in accordance with the terms of the agreement. While the evidence does not show that the deed was actually tendered to Zimmerman, it is sufficient to warrant the conclusion that the latter knew of its existence and that Gregg Brothers held it for him and that he could get it by paying the purchase-money and executing the notes in accordance with the terms stipulated. Zimmerman, however, was unwilling to accept this deed as a perfect title, claiming that it was necessary for Dobson to get some sort of an order from the probate court authorizing him to make the sale of the land in controversy. At the time of the transaction mentioned Dobson's wife was dead and had left some minor children surviving her. The uncontradicted evidence is that neither Dobson's deceased wife nor his children ever had any interest in this tract of land or the funds with which it was purchased. He bought the land after the death of his wife, and with funds received by him from his deceased father's estate. These funds were never in any way mingled with any community funds belonging to Dobson and his deceased wife, either before or after her death. Dobson testifies that he acquainted Zimmerman with those facts at the time the contract of sale was entered into. Zimmerman admits as much, but says that he did not believe Dobson's statements, and that was the reason why he insisted upon the latter's obtaining an order from the probate court. On several occasions after the execution of this written agreement, and prior to the first of January, 1907, Zimmerman demanded of Dobson to know what he intended to do with reference to perfecting his title. In reply Dobson told him that he did not intend to do anything more than he had done, evidently referring to the execution and delivery of the deed for Zimmerman to Gregg Brothers. This not being satisfactory to Zimmerman, on or about the twentieth of January, 1907, he called upon Gregg Brothers and withdrew the deposit of $500.00 which he had previously made with them in compliance with the terms of the

written contract, stating that he needed the money for use in his business. He at the same time delivered to Gregg Brothers a receipt showing that he had withdrawn the deposit, and in which he also contracted to indemnify Gregg Brothers against any damage they might sustain by reason of liability to Dobson for surrendering the amount of the deposit. After Zimmerman had withdrawn this deposit, and upon ascertaining that fact, Dobson also withdrew from Gregg Brothers the deed to Zimmerman which he had deposited with them. Zimmerman never at any time tendered to Dobson the balance of the purchase-money or any of the notes provided for by the terms of the contract, nor did he ever demand of Dobson the deed of conveyance which had been deposited with Gregg Brothers. Zimmerman, however, expressed a willingness to pay the remainder of the purchase-money and perform the balance of the terms of his contract, if Dobson would get an order from the probate court authorizing him to sell the land. After the withdrawal of the deposit by Zimmerman and the deed by Dobson, it is claimed that the latter sold the land to other parties. It is also shown by the evidence that the land in controversy advanced in price between the making of the contract of sale and the first of January following. The difference caused by that advance between the market value of the land at the time the contract was breached and the price Zimmerman was to pay, is made the basis of the damages claimed in this case.

*Conclusions of Law.*—The first, second, third and fourth assignments of error complain of the action of the court in overruling some special exceptions to the plaintiff's original petition, the action of the court in admitting parol testimony to explain certain portions of the written contract, and of the findings of fact made by the court in the judgment rendered. Aside from bills Nos. 1 and 2 the record contains no evidence of any ruling of the court on the special exceptions. This method of reserving exceptions to rulings of that character is not in accord with the rules of practice adopted in this State. Rule 53 for district and county courts; Waco Ice & R. Co. v. Wiggins, 32 S. W. 58. All of the bills, however, were filed more than twenty days after the adjournment of court, and for that reason, if for no other, can not be here considered.

It was insisted by counsel for appellant in the oral argument made in this case, that the exception to the admission of the parol testimony had been sufficiently reserved in the statement of facts to authorize a consideration by the court of the objection made. It is true that an exception to the admission of testimony can be reserved in the statement of facts when the latter has been agreed to by the parties. Kansas City S. Ry. Co. v. Rosebrook-Josey Grain Co., 114 S. W., 437, recently decided by this court, and cases there cited. But we think in such cases it is essential, to authorize the exceptions to be considered, that the statement of facts should be filed within the time provided by law for the filing of bills of exception. Morris v. Rhine, 8 S. W., 317; Willis v. Smith, 17 Texas Civ. App., 543. The Act of May 25, 1907, permitting statements of fact to be filed at any time within thirty days after the adjournment of the term of court,

did not include bills of exception within its provisions. Acts 1907, p. 509. The latter are governed by the provisions of the Act of May fourteenth, passed at the same session. Acts 1907, p. 446. This last named Act provides that the court may, by an order entered to that effect, permit the filing of bills of exception within twenty days after the adjournment of the term. The file mark upon the statement of facts in this case shows that it was not filed till more than twenty days had elapsed after the adjournment of the court for that term. For these reasons the objection raised by that assignment can not be considered.

There are a number of other assignments which in various forms attack the judgment rendered, upon the ground that it is not supported by the evidence. The right of the appellee to recover in this case can be justified only by a finding that the appellant failed or refused to make and deliver a deed or deeds transferring the land in accordance with the terms of the contract of sale. Those terms provided that "the title to said property is to be perfect or to be made perfect within a reasonable time." It will be conceded, for the purposes of this case, that the parties contemplated that the appellee was to have a title perfect in all respects, and free from all clouds and encumbrances except that which existed in favor of the State for the unpaid balance of the purchase money. The question then is, does the evidence warrant the conclusion that the appellant has failed to comply with his contract? The burden of showing that he has so failed rested upon the appellee. 29 Am. & Eng. Ency., p. 620. It is not contended that appellant refused to make a deed in proper form conveying his title to the land. The evidence shows that such a deed was made and deposited with Gregg Brothers for the appellee, and that the latter knew it was there and that it might have been had for the asking upon a compliance with the terms of the instrument. But he appears to rest his cause of action upon the refusal of the appellant to do more than this—to get an order from the probate court authorizing him to sell the land. It seems that the appellee was under the impression that the minor children of the appellant owned an interest in the land, or at least had an apparent interest, and that it was necessary for Dobson to obtain authority from the probate court to make a sale before he could pass a perfect title. The court permitted him to testify that at the time the written contract was made Dobson agreed that he would go into the probate court and make him a perfect title; that they then drew up and executed the written contract hereinbefore set out. The written contract does not in terms require this to be done, but only calls for a perfect title. The evidence is uncontroverted that the land in question was purchased by Dobson after the death of his wife, with funds received from his father's estate; that these were in no way mingled with the community funds of himself and his deceased wife, as he says, for the reason they had no community funds. The testimony also shows that Dobson told the appellee of those facts at the time the contract was entered into. Appellee admits as much, but says he did not believe it. So far as the record before us discloses, he has not attempted to contradict any of the statements made by Dobson as to his exclusive ownership of the land, and the manner in which he

claims to have acquired it; and those facts, therefore, come before us as undisputed. If those facts be true it logically follows that Dobson's children had no actual or apparent interest in the land, and there were no conditions which cast even a cloud upon his title. Without setting up a state of facts diametrically opposed to what the evidence here shows to have been the rights of himself and children with reference to the land, Dobson could not have stated a subject-matter over which the probate court could exercise jurisdiction. Neither was there anything which a court of equity could undertake to relieve against. We may admit that the parties, acting under a mistaken view of the law or the facts, did make an agreement such as is testified to by Zimmerman; but a failure to comply with that agreement can not be made the basis for a judgment for damages under the pleadings in this case. The contract sued on is that embraced in the written instrument, and does not require Dobson to go into the probate court for an order, or for any purpose. It simply binds him to make a perfect title, or to perfect it within a reasonable time. If the title he did make and the one appellee refused to take was perfect, or was not subject to the objections urged by the appellee as a reason for refusing it, then the judgment in this case is without evidence to support it. While the court filed no separate findings of fact and conclusions of law, he makes this recitation in the judgment: "The court is of the opinion that the contract entered into......was not complied with by the defendant, but was breached, and no perfect title was presented by defendant to plaintiff for examination." Neither the written contract nor any parol agreement is shown by the evidence under the great latitude permitted by the court in the introduction of testimony, in which the appellant made any such an undertaking as that upon which the court based his judgment. In fact, the appellee himself admits that the appellant did not agree to furnish him an abstract for inspection, but that an abstract was prepared to which he might have had access. We think the judgment in this case is without any support. The testimony shows that the title tendered by the appellant was perfect, or at least absolutely free from any of the objections which a probate court would have authority to remove; and further shows that the sole excuse urged by the appellee for withdrawing his deposit of a part of the purchase money was without justification. After he had so withdrawn it the appellant had the right to assume that the contract was abandoned and that he could thereafter sell the land to other parties upon such terms as he saw fit.

The judgment is reversed and here rendered in favor of the appellant.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

As stated in the original opinion disposing of this case, this is a suit to recover damages for an alleged breach of a contract to convey land. It is true there are some expressions in the pleadings of the plaintiff

which indicate a purpose to charge the failure of the appellant, Dobson, to convey by a particular kind of title—that is, by what he terms a perfect title—as a basis of the claim for damages. The character of the damages alleged is sufficient to determine the nature of the suit. It is not claimed that the appellant's title was defective, or that he offered to or did convey an imperfect title, but that "he failed and refused to perfect said title and accept said cash payment and said promissory vendor's lien notes and make proper conveyance of said land to plaintiff." The damage which he seeks to recover is the difference between the contract price of the land and its market value on the 1st day of January thereafter, the date when it is charged the conveyance should 'have been made. Clearly, the appellee is suing for the loss of a bargain only, and not for damages by reason of being compelled to accept an imperfect title, or one defective, or for the failure of a title in whole or in part. There is in the petition an entire absence of any charge that the appellant was not the sole owner of the land, and that he for that reason was unable to convey a title perfect in all respects.

In this State the general rule is that the proper measure of the damages which the vendee may recover for a breach of a contract to convey or make title to land, is the amount he has paid as purchase money. Roberts & Corley v. McFadden, 74 S. W., 105, and cases there cited. The only exceptions which appear to have been made to this rule are where the vendor either wilfully or fraudulently fails or refuses to comply with his contract to convey. In these last named instances only can the vendee recover for the loss of his bargain in addition to what he may have paid as purchase money. If the vendor presents or tenders a conveyance or title which is merely defective by reason of the existence of some cloud or apparent imperfection the vendee has no right to refuse to accept it and sue for the loss of the bargain, but at most he would only be entitled to have a rescission of the contract and the recovery of whatever he may have paid. Roberts & Corley v. McFadden, supra. Applying those principles to the facts here involved, we have concluded that even if it be held that the original petition states a cause of action for the damages claimed the facts do not warrant a judgment. If at the time the. contract offered in evidence was made Dobson had no title, and for that reason was unable to make a good conveyance, the most which the appellee could recover would be the amount he had deposited as earnest money with Gregg Brothers. Hall v. York, 22 Texas, 642; Wheeler v. Styles, 28 Texas, 242. This is the prevailing rule unless there be additional circumstances of fraud and special damages resulting to the vendee. The mere fact that the vendor at the time of binding himself to convey knew that he had no title is not such fraud as would authorize such additional recovery. See authorities last cited. There was no occasion for the appellee in this instance to lose his bargain. The evidence shows conclusively that he might have acquired the deed conveying all of the title which Dobson owned either at the time the contract of conveyance was made, or at the time it was sought to be enforced. When the appellee withdrew his money which he had deposited in the hands of Gregg Brothers he had the option of accepting the warranty deed which Dobson had deposited with Gregg Brothers for his benefit. He elected to reject the deed and withdraw the purchase

money, and he must abide the consequences of his own choice. It is immaterial, so far as the right to recover the damages here sought is concerned, what the parties had in mind when they contracted with reference to making a perfect title to the land. We do not undertake to say that under proper allegations and proof the appellee could not recover damages for a failure on the part of the appellant to do what he claims in his testimony the latter agreed to do. But that question is not here involved, because no injuries on account of such failure are either alleged or proven; neither is it alleged or shown that Dobson's deed of general warranty—that which he had placed at the disposal of the appellee—was not in itself a perfect title. A perfect title is one which is merchantable or marketable. McCleary v. Chipman, 32 Ind. App., 489, 68 N. E., 320; Ross v. Smiley, 70 Pac., 766; Berge v. Bock, 34 Mo., 69. It is also defined as one which is good and valid beyond a reasonable doubt. Reynolds v. Borrel, 86 Cal., 536, 25 Pac., 67; Sheeley v. Miles, 93 Cal., 288, 28 Pac., 1047. In this case the evidence fails to cast even a shadow upon the title of Dobson. The testimony of the appellee himself indicates nothing inconsistent with what Dobson says about the perfect reliability of his title.

We must decline the request of the appellee to find as a fact that Gregg Brothers were at the time they were holding the deed and the earnest money deposited by the parties, acting as the exclusive agents of the appellant, Dobson. The Greggs had brought the parties together, and were undoubtedly the agents of Dobson in negotiating the terms of the sale as finally agreed on; but in their undertaking to accept and hold the earnest money which Zimmerman agreed to deposit, they departed from their exclusive agency for Dobson and became trustees charged with the performance of certain duties due to both parties. If we are to treat Gregg Brothers as the sole agents of Dobson, then we must regard the deposit of the money by the appellee as a payment direct to Dobson. This could not be, for the reason that it was specially stipulated that in the event Dobson failed to comply with his contract Gregg Brothers were to deliver this money back to him. In this respect they were unquestionably charged with a trust for the benefit of appellee, and which Dobson had no right to control. How, then, can it be said that they were Dobson's agents and yet were charged with the performance of duties over which Dobson had no control? While acting as a stakeholder they were acting for both parties—for one as much as for the other.

The motion for a rehearing is overruled.

*Overruled.*

Writ of error refused.