## MANSFIELD v. RIGSBY.   (No. 2473.)

(Court of Civil Appeals of Texas. Amarillo. May 6, 1925.)

1. **Appeal and error ⬳1001(1)—New trial ⬳ 70—Neither trial court nor Court of Civil Appeals authorized to disturb finding of jury on fact question supported by pleadings and evidence.**

Where there were pleadings and evidence to support finding of jury on fact question, neither trial court nor Court of Civil Appeals are authorized to disturb such findings.

2. **Trial ⬳366—Error, if any, in submission of issues waived, where issues not excepted to.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, where issues submitted to jury were not excepted to, error, if any, in their submission was waived.

3. **Trial ⬳365(2)—Verdict conclusive on trial court, where evidence supported issues submitted.**

Verdict on special issues, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1986, where evidence supported issues submitted, was conclusive on trial court in rendering judgment.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by T. J. Mansfield against F. E. Rigsby. Judgment for defendant, and plaintiff appeals. Affirmed.

Fitzgerald & Hachitt, of Wichita Falls, for appellant.

W. B. Chauncy, of Wichita Falls, for appellee.

RANDOLPH, J. Mansfield and Barnett, and F. E. Rigsby, appellee, in July, 1921, bought the oil and gas lease on block 1, Wigham Addition to the town of Burkburnett. There had theretofore been drilled on said lease two wells. These wells were not producing at the date of the purchase, and had been dormant for some time. Mansfield and Barnett owned an undivided one-half interest in the lease, and Rigsby owned the other one-half. An engine was needed for the purpose of cleaning the wells out to thereafter obtain the production from said wells. On July 26, 1920, said parties entered into a written contract, setting out the interest of the parties in the lease, the manner in which it was to be developed, and the amount of expense each was to incur. Mansfield, being the owner of a Superior gas engine, proposed to move the engine on to the lease, and same was moved thereon, under the following term of the contract:

"Party of the second part (Rigsby) is to pay $850.00 for his one-half interest in Superior engine to be installed by parties of the first part (Mansfield and Barnett), provided said engine is used in getting the production from said well. If no well is made, said engine is to be loaned for the purpose of cleaning out, and said party of the second part shall be released from any further obligation to buy said engine."

The engine having been moved onto the leased land and used in the manner hereinafter set out, and Rigsby refusing to pay said sum of $850, Mansfield filed this suit. On trial of the case judgment was rendered in favor of Rigsby, and from such judgment appeal was taken by Mansfield to this court.

Plaintiff, in his second amended original petition, after setting out the above mentioned and described contract, alleges that, after said engine was moved to said lease, same was used for cleaning out said well, and said well did produce oil in paying quantities, and was pumped, and proved to be a well of 10 or 12 barrels daily production, and that by reason thereof the obligation of the defendant to pay to the plaintiff $850 for a one-half interest in said engine became fixed, that is, the contingency upon which depended said obligation thereby occurred; that thereafter it was determined to pull the casing from said well and to "shoot" the same, in hopes of making a 30 or 40 barrel producer, and that, while this was being

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

done, the plaintiff sold his one-half interest in the lease and equipment to W. M. Priddy, but with the understanding that said well would be cleaned out by said W. M. Priddy and a producer made thereof, if possible, alleging further that Rigsby sold his one-half interest, including a one-half interest in such engine; that Priddy continued to use said engine on said well; and that said well produced oil in paying quantities, and that the contingency whereby defendant became bound and liable to plaintiff had come to pass, and his obligation to plaintiff had become fixed by reason thereof. Further, plaintiff alleges that, if he is mistaken in this, then, and in that event, plaintiff avers that said contingency would have happened had the defendant not sold his interest in said property, but had retained it as a joint owner with Priddy; at any rate, and in any event, said contingency happened after the sale to Priddy, and for said reason the said Rigsby became bound and liable to pay such sum of $850, and that defendant is estopped from denying his obligation under the contract.

Defendant answered by exceptions, general denial, and by specifically denying that the engine was used for any purpose except to clean out the well; that, as plaintiff had failed to make a producing well, the defendant was not obligated to pay plaintiff for the one-half interest in the engine; that it was not the intention of plaintiff and defendant, if any other person used the engine in producing oil from said lease, that defendant should pay the $850, but that it was intended that the defendant should be so obligated only in the event that the plaintiff and the defendant themselves should use said engine in producing oil from said lease; that he never at any time claimed any interest in said engine, nor did he sell any interest in the engine to Priddy; that at the time defendant and plaintiff sold said lease to W. M. Priddy they had agreed that they were not able to make a producing well on said lease, and despaired of ever being able to produce oil therefrom, and it was for this reason that they sold said lease to Priddy.

The trial court submitted five issues to the jury, of which five issues the jury answered the following:

"First issue: Would the well in question really have produced oil in paying quantities had the defendant Rigsby continued his operations there with reasonable diligence?"

To this the answer of the jury was "No."

"Second issue: Did the plaintiff, Mansfield, and the defendant, Rigsby, make the well on said lease produce oil in paying quantities?"

This was also answered "No."

"Fourth issue: Find whether or not defendant Rigsby sold to W. M. Priddy an undivided one-half interest in the Superior engine?"

The jury's answer to this was "No."

"Issue No. 5: Did the plaintiff, Mansfield, and the defendant, Rigsby, agree, prior to the time that they sold said lease, that they would not be able to make said well produce oil in paying quantities?"

The jury's answer to this was "Yes."

[1] Upon the question of the plaintiff's right to recover for the value of an undivided one-half interest in the engine, was the sale of the engine to Priddy established by the evidence and did Rigsby and Mansfield agree, prior to the sale, that they would not be able to make said well produce in paying quantities? The jury, under proper pleadings, and on the issues submitted to them, found against the appellant. There being pleading and evidence to support such findings, neither the trial court nor this court are authorized to disturb the findings, and judgment was properly rendered by the trial court against appellant.

[2] The issues submitted to the jury by the trial court were not excepted to by appellant, hence, if there was any error in their submission, such errors were waived. Article 1971, V. S. C. S. 1914.

[3] The evidence supporting the issues submitted, the verdict of the jury was conclusive on the trial court, and no other judgment could have been rendered than was rendered. Article 1986, V. S. C. S. 1914; Hodde v. Malone Real Estate Co. (Tex. Civ. App.) 196 S. W. 347; Nowlin v. Hall, 97 Tex. 441, 79 S. W. 806.

The jury having decided that the defendant, Rigsby, did not sell a one-half interest in the engine to Priddy, and that the parties, Mansfield and Rigsby, had agreed that the well could not be made a producing well, and for that reason they sold the lease to Priddy, being abundantly sustained by the evidence, the trial court could not have rendered any other judgment, and we therefore affirm the judgment of the trial court.