## LEWIS v. EASLEY.
### No. 3518.

Court of Civil Appeals of Texas. Amarillo.
Dec. 17, 1930.

Rehearing Denied Jan. 14, 1931.

Kinney & Ritchey, of Miami, for appellant.

Jno. A. Coffee, of Hereford, for appellee.

RANDOLPH, J.

This suit was filed by appellee as plaintiff against appellant as defendant. Judgment for plaintiff, and defendant appeals.

The plaintiff's petition alleged the making and delivery by defendant to the Western National Bank of Hereford of a promissory note in writing in the sum of $240, payable to the order of the said bank, dated March 5, 1929, due on April 14, 1929, and providing for interest and attorney fees.

Plaintiff further represents that, in order to secure the bank, he signed the note upon its face as a surety in order that the bank would extend the sum of money to the defendant, and that the plaintiff signed the note only for the purpose of securing the bank in the payment of same, that on or about the 24th of April, 1929, the plaintiff purchased said note from the Western National Bank, and the bank at that time delivered and indorsed said note to the plaintiff, and that the plaintiff is the legal owner and holder of same. Plaintiff prays for judgment for the principal, interest, and attorney fees.

The defendant filed his plea of privilege to be sued in the county of his residence, which was duly controverted by the plaintiff, and the hearing set by the court. Defendant also filed his answer subject to the action of the trial court upon his plea of privilege. Both the plea of privilege and the case on its merits were heard upon the same day. The plea of privilege was by the court overruled, and judgment was rendered for the plaintiff on the merits as prayed for by him, the court having tried the case upon its merits, a jury being waived.

The statement of facts, it is agreed, presents identical facts on the hearing of the plea of privilege and on the trial on the merits.

In the pleadings of the parties, each claims to stand in the relationship of surety to the other; hence it becomes a question of fact that must have been solved from the evidence.

The plaintiff alleges and testifies that he was a surety for the defendant on the note sued on, and that as such surety he purchased the note outright from the bank.

The defendant alleges, but did not testify, that he was a surety for the plaintiff, that the plaintiff did not purchase the note, but paid and discharged it, and hence that plaintiff's cause of action was wrongfully brought on the note when, if there was any liability on the defendant's part, plaintiff's cause of action arose on the implied promise by way of assumpsit to indemnify the plaintiff to repay him the money he was out, plus 6 per cent. interest.

It is true that the rule is, when a surety pays a note for his principal and sues the principal on such payment, the suit is one in assumpsit upon the implied promise to repay the surety. Faires v. Cockrell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Hazleton v. Holt (Tex. Civ. App.) 285 S. W. 1115; Key v. Oates (Tex. Civ. App.) 280 S. W. 286. The evidence is so unsatisfactory in showing the facts as to the whole transaction that we feel constrained to hold that the judgment of the trial court concludes that matter as against the defendant.

As stated, the defendant did not testify on the hearing, but the evidence, as we gather it from the plaintiff's testimony and of other witnesses, shows that at one time the plaintiff and another party owned a garage in the town of Hereford. After a short time the plaintiff quit the business and turned it over to the other party and had no further connection with it. Thereafter it appears that one Landrum was in possession and operating the garage and while so doing that he borrowed $500 from the Western National Bank and gave the bank his note for it, with the plaintiff as his surety on the note. Subsequent to the delivery of this note to the bank, the date of which is not definitely shown, the defendant appears to have purchased the garage from Landrum. It appears that, after the giving of the $500 note, the defendant bought Landrum's garage, and that he became a signer, either as principal or surety on the note, which had been reduced to $275 by payments by Landrum. The $275 note was renewed on May 1, 1928. This renewal note was signed by Landrum, plaintiff, and the defendant. It was again renewed July 3, 1928, and a $35 payment by the Buick Service Station was made; the service station at that time being operated by the defendant. This reduced the principal of the note to $240. Several other renewals were made of the $240 note, which were signed by defendant, Lewis, and the plaintiff. The note sued on was the last renewal and all of which renewals were for a part of the money borrowed from the bank on the $500 note originally signed by Landrum and Easley. There is no satisfactory explanation as to how the defendant came into the several transactions. It is true that the plaintiff testifies that in March, 1929, the defendant came to his office with a note for him to sign and stated that he was borrowing money from the bank and wanted to get some one to sign with him. It also appears that the note presented to the plaintiff, notwithstanding this testimony, was, in fact, as shown by the bank's books, a renewal of the balance unpaid on the $500 note.

If the defendant was a principal on the note, how and when did he become the principal on the note? What fact made him such? If he was a surety only, when did he become one? If he became a principal under any term of his purchase of the garage from Landrum, this ought to have been ascertained. If the defendant was merely a surety, whose surety was he? This was within his power to explain, yet he did not take the stand in an effort to furnish the evidence to support his pleadings.

■ It will be seen that the questions of fact as found by the court when he rendered his judgment control our disposition of the case if there is any evidence to support such judgment. The question as to which of these parties are surety, which the court was bound to find in rendering his judgment and which the court was bound to have found against the defendant in order to render such judgment against him, must have been presented and solved under the evidence.

■■ The question as to whether the plaintiff as surety paid off the bank's note or purchased it remains to be considered. If he did purchase it rather than be sued and with the intention of bringing suit himself, he certainly had that right. If he paid the note off and discharged it, then plaintiff's cause of action against the defendant as principal would rest upon the defendant's implied promise to repay him for so doing. If the plaintiff paid off the note and the defendant was his comaker, or if the defendant was only a cosurety with the plaintiff, the same rule would apply as to the defendant's contributing one-half of the amount paid by plaintiff.

■■ The plea of privilege should have been sustained if the cause of action was upon the implied promise, but, if the plaintiff's cause of action was upon the note, duly sold and transferred to him, then the plea should have been overruled, for the reason that the note was made payable in Deaf Smith county, where the suit was tried.

■ The evidence upon the question of payment or of purchase is substantially as follows:

The note bears the following indorsement: "Pay to the order of O. E. Easley without recourse upon us. The Western National Bank of Hereford by G. A. F. Parker, President."

The plaintiff Easley testified substantially that the $240 note sued on is a renewal. At the time he went to the bank and paid the note, it was indorsed to him. When Eubank came to his office as an official of the Western National Bank, plaintiff told him that rather than be sued he would pay the note himself and then sue Lewis, the defendant. The plaintiff testifies that he knew he would be sued if he did not pay the note; that Mr. G. A. F. Parker wrote the indorsement on the back of the note as of date 4—24—29, and says: "That is the date and this is the instrument by which I acquired title to this note."

G. A. F. Parker, president of the bank, testified in part: "The note signed by Earl W. Lewis and O. E. Easley has been paid. We endorsed that to Mr. Easley and he settled that with us. We claim on Mr. Easley and not on this note. In the settlement of this note it was settled by another note by Mr. Easley and surrendered to him. That is my recollection. We do not claim any obligation on this note for we do not own this note. It belongs to Mr. Easley. So far as the bank is concerned, this note has been paid and we do not claim anything under this note at all. We have sold the note. It is not ours."

This evidence can be construed on its face to mean either a payment of the debt owing to the bank or a sale by the bank to the plaintiff. The intention of the parties, however, can best be arrived at by what they did in the transaction, as shown by the circumstances surrounding it. The bank having been paid and having transferred the note to the plaintiff does not necessarily carry with it the fact that the note was paid and rendered functus officio, but the payment to the bank could be consistent also with the sale of the note to the surety. These were the questions before the court and necessary to be solved by him in the rendition of the judgment in favor of the plaintiff. This being true, we have no authority to set aside the judgment, even though we might have found differently on an original hearing before us.

■ Where there is evidence to support the judgment, the verdict of the jury is conclusive on this court. Mansfield v. Rigsby (Tex.Civ. App.) 273 S. W. 290, 291; Hodde v. Malone Real Estate Co. (Tex. Civ. App.) 196 S. W. 347; Nowlin v. Hall, 97 Tex. 441, 79 S. W. 806.

Where a case is tried before the court without the intervention of a jury, the same rule applies to the necessary findings of the court to sustain the judgment as on the findings of a jury.

We therefore affirm the judgment of the trial court.