## SAULSBURY v. ANDERSON et al.
### No. 3564.

Court of Civil Appeals of Texas. Amarillo.
May 13, 1931.

Rehearing Denied June 3, 1931.

Cook, Smith, Teed, Sturgeon & Wade, of Pampa, for appellant.

Willis, Studer & Studer, of Pampa, and D. W. Tracy, of Sayre, Okl., for appellees.

RANDOLPH, J.

This suit was filed by appellant Saulsbury against H. M. Anderson and W. L. Mathers as defendants. From a judgment that plaintiff take nothing by his suit as against the defendants and that the defendant Mathers have and recover of and from the plaintiff and defendant Anderson the land in controversy, appeal has been taken to this court.

Plaintiff in his petition alleges substantially that Anderson was the owner of the land in controversy; that on the 8th December, 1927, plaintiff and Anderson entered into a written contract whereby, for a consideration of $22,400, to be paid as provided in the contract and upon the terms and conditions therein specified, defendant Anderson agreed to sell and convey the land in controversy to plaintiff.

That said contract provided, among other things, that a cash payment of $1,000 was to be deposited in the First National Bank of Pampa, Tex., to be held in escrow by it until the title to the land was approved by Saulsbury; that plaintiff has complied with his contract in every particular, including the

deposit aforesaid for the account of defendant Anderson; further, that said contract provided that defendant Anderson would furnish plaintiff with an abstract of title showing good and merchantable title to said land, subject only to the incumbrances described in the contract, which plaintiff had assumed payment of; alleging that the plaintiff has always been and is ready to perform his part of the contract.

Plaintiff further alleges that a part of the consideration which Anderson was to receive for the land was the assumption by plaintiff and his agreement to pay off and discharge a note in the sum of $8,500, which note is secured by deed of trust on said land; that the defendant Mathers knew of the written contract entered into between plaintiff and defendant Anderson, which was duly recorded and also had constructive notice of such contract. And after same was entered into between plaintiff and defendant Anderson, that defendants Anderson and Mathers entered into a fraudulent conspiracy to defeat plaintiff of the rights acquired by him under the terms of said written contract, in that they agreed between themselves that they should have said deed of trust foreclosed and said land sold under the terms of said deed of trust and that defendant Mathers would become the purchaser of said land at such sale and thereby divest plaintiff of any right, title, or interest he might have acquired in said land by reason of the execution of said contract, and said defendants instructed the agent of the holder of the note so secured by said deed of trust and the trustee or substitute trustee to foreclose the same under the deed of trust, and as a result of such design and secret agreement so entered into between said defendants, said land was sold by one I. B. Hughey, as agent and attorney in fact for H. M. Gossett, trustee for the beneficiary in said deed of trust, the Federal Land Bank of Houston, and deed was made by said Hughey to the defendant W. L. Mathers. Further alleging that the sale of said land was null and void for the reason that said land was not advertised for sale as provided in said deed of trust and by law, in that no notices of sale were posted as required by law or by said deed of trust; that said land was not sold at the courthouse door as required by law or as provided in the deed of trust and that said trustee was not authorized to make said sale by an agent or attorney in fact; that said land was not sold nor deed executed by any one authorized by law or by said deed of trust to make such deed, and none of the provisions of said deed of trust were complied with, and as a result thereof, such sale was void and defendant Mathers acquired no rights thereunder. It is further alleged that the defendants Anderson and Mathers at and before the time of such sale agreed between themselves, in order to divest plaintiff of his right to said land, that defendant Mathers would purchase the same at such sale and take title in his own name, and that after plaintiff was eliminated, he would reconvey such land to the defendant Anderson, retaining against such land a lien to secure him in the payment of all sums of money expended by him in the purchase of same.

It is further alleged in said petition that the defendants are able to make a good and sufficient title to said premises if they think proper to do so, but refuse to do so, although plaintiff has demanded the same from them within the time and according to the terms and conditions contained in said contract and has been ready, able, and willing to pay the balance of the consideration which he contracted to pay Anderson upon having a proper conveyance of same executed by the defendant to the plaintiff; that the whole of the residue of the purchase money for said premises has been ready and unproductive in his hands for completing said purchase from the time it ought to have been completed by the terms of said contract. Further plaintiff alleges in the alternative that under the terms of said contract, plaintiff was to pay defendant Anderson the sum of $22,400 for said land, and that at this time the market and intrinsic value of said land is the sum of $50,000, and that by reason of defendant Anderson failing and refusing to comply with his contract, plaintiff has been damaged in the sum of $27,600.

Plaintiff prays for judgment that the defendant Anderson specifically perform his contract and that the defendant Mathers be declared to have no right, title, or interest in said land, and that the defendant Mathers' deed to said land be canceled and held for naught, and that said Anderson and defendant Mathers be required to execute such conveyances as may be necessary to convey said property and all of it to plaintiff, the said plaintiff being ready and willing and hereby offering specifically to perform said contract on his part upon defendants executing proper conveyances to the plaintiff, pursuant to the terms of said contract, to pay to the defendant Anderson the residue of the purchase money or, in the alternative, that he recover judgment for his damages in the sum of $27,600 against both defendants, jointly and severally, with interest, costs of suit, and all other relief, general and special.

The defendant Anderson filed his first amended original answer, consisting of a general demurrer and special exceptions and general denial and also special denials and pleas, in which said defendant pleads specifically that the contract upon which plaintiff bases his cause of action was signed by himself only upon condition that his (defend-

ant Anderson's) wife sign the same or sign a deed conveying the land in question and was not to become effective unless in the event that she would sign and that said defendant's wife refused to sign the contract or to sign a deed; that plaintiff Saulsbury at all times breached the contract and refused to perform the terms thereof in such a way as to be entitled to a specific performance on said defendant's part, even if there was a binding contract; and that this said defendant offered to and has at all times been ready to perform the contract on his part.

Defendant Anderson further specially pleads that by virtue of the third paragraph of said contract, same is rendered void at the option of the defendant Anderson and said defendant did elect and hereby elects to declare the contract void because the plaintiff never made any of the payments he contracted to make, although repeatedly requested to do so.

Defendant Anderson also adopts the answer of defendant Mathers so far as they are applicable.

Further the said defendant's answer pleads that the contract in controversy was conditioned upon the proposition that his wife signed the deed and that plaintiff well knew that 200 acres of land in controversy was the homestead of Anderson and his wife at the time and before the making of the contract herein. (Here setting out the homestead claims of 200 acres by designation.)

The defendant Mathers filed his answer consisting of general demurrer, general denial, and special plea as follows: That at the sale alleged in plaintiff's petition that was made by the Federal Land Bank of Houston through its agent or attorney in fact I. B. Hughey, the defendant Mathers' bid at same was the sum of $14,345.45 cash to take up the sum of $892.50 installments of interest due on the James B. Brown loan against the land, which James B. Brown was secured by a deed of trust upon the land in controversy. Further defendant Mathers alleges that under the deed of trust from Anderson and wife to H. M. Gossett, trustee for the Federal Land Bank of Houston, it was provided that same was given on the land in controversy for the sum of $8,500, with interest thereon at 6 per cent. per annum, payable semiannually on the 1st of June and the 1st of December of each year under the amortization tables provided by the Federal Farm Board printed on the back of said trust note, and it was further provided that all payments not made when due should bear interest from the date when due at the rate of 6 per cent. per annum and for attorney's fees; that said $8,500 advanced on the notes secured by deed of trust to the Federal Land Bank of Houston to take up six vendor's lien notes aggregating the sum of $8,500 that was secured by vendor's lien on the land in controversy and by said deed of trust the Federal Land Bank, or its assigns, was subrogated to the rights, liens, equities, and superior title that were retained under and by virtue of said vendor's lien. It was further provided in said trust deed that if default was made in the payment of any interest installment of said note, the Federal Land Bank of Houston, or its assigns, should have the right to sell the land in satisfaction of the defaulted payments without declaring the whole debt due and subject to the unmatured part of the notes secured by the deed of trust which should still remain in force and the liens still secure the unmatured part of the notes, the same as if the sale had not been made, and that one sale would not exhaust the power of sale therein.

It was further alleged in defendant Mathers' answer that H. M. Gossett, the trustee named in said deed of trust, was empowered to appoint an attorney in fact to act as trustee in his name, place, and stead by an instrument duly signed and acknowledged, and such attorney in fact should act in place of said trustee in any foreclosure under the power to sell, and that said Gossett did execute, acknowledge, and deliver to said I. B. Hughey the power of sale to sell the land for the past due installments of interest that fell due December 26, 1926, and June and December, 1927. It is also alleged in said answer that by virtue of being the highest bidder for said land, his bid was not only the sum of $14,345.45 cash, but that also he bid at the sale to assume the balance due the Federal Land Bank that was unmatured and that said defendant, in consideration of such bid, received from the trustee, H. M. Gossett, a deed to the land in controversy, which was made a part of said answer. In said deed it was stipulated that this defendant did assume the balance due the Federal Land Bank, and defendant Mathers alleges that by reason of his having paid his money on the debt that was secured by a lien in said deed of trust to said bank, also secured by the vendor's lien that secured the original deferred purchase money for said land when it was conveyed by one Foster, the then owner, if there is any vice or defect in the sale under the deed of trust because of which the legal title did not pass to this defendant, he states that he is equitably entitled to recover the land by reason of the vendor's lien that he acquired or that he is entitled to be subrogated to the loans that were held by said bank and James B. Brown, or that in equity he should have a lien to secure him for the debts that were evidenced by said loans.

The defendant Mathers prayed that plaintiff go hence without day or, in the event the plaintiff should recover against him, that this defendant be subrogated to said liens

and that said liens be foreclosed in his behalf.

Further, defendant Mathers in said answer alleges that he has acquired the superior right, title, and possession of said land by virtue of having purchased same at the deed of trust sale as against plaintiff and defendant Anderson, and prays that he recover of and from the plaintiff and the defendant Anderson the right, title, and possession of said land.

There are other and supplemental pleadings which we do not deem it necessary to set out here, as the statement of the pleadings given above is, in our opinion, sufficient to indicate the questions which have arisen on the trial of the case and which are herein presented for our decision.

The trial court submitted the case to the jury upon the following special issues:

"Special Issue No. One: Do you find from a preponderance of the evidence that it was understood and agreed between Anderson and Saulsbury, at the time of the written contract for sale of Anderson's land was made and entered into between Anderson and Saulsbury on December 8th, 1927, that before said contract for the sale of said land would become effective Anderson's wife should sign said contract, or should sign a deed conveying the land in controversy? Answer yes or no.

"If you have answered the above and foregoing special issue No. One, Yes, you need not answer any of the following issues, but if you have answered said special issue No. One, No, then you will answer the following, as directed:

"Special Issue No. Two: Do you find from a preponderance of the evidence that the plaintiff, Saulsbury, furnished to the defendant, Anderson, a copy of his (Saulsbury's) attorney's opinion on title to the land in controversy? Answer yes or no.

"Special Issue No. Three: Do you find from a preponderance of the evidence that the plaintiff, Saulsbury, was at all times from December 8, 1927, to May 1, 1928, ready, able and willing to pay to the defendant, Anderson, the one thousand dollars cash, and to assume a loan of $8500.00 in favor of the Federal Land Bank, and also a loan of ten thousand dollars payable to James B. Brown, Wichita, Kansas, also the taxes for the year 1927, and to pay in cash to the defendant Anderson balance equity in said land figured on the basis of 640 acres at $35.00 per acre, upon defendant Anderson and wife conveying to plaintiff, Saulsbury, by good and sufficient warranty deed, free and clear of all encumbrances, (except loan to the Federal Land Bank, and loan in favor of James B. Brown, and the taxes for the year 1927), said section number 203? Answer yes or no.

"Special Issue No. Four: What, from a preponderance of the evidence, do you find to have been the reasonable market value, in Gray County, Texas, of said section number 203, at the time defendant Anderson advised plaintiff Saulsbury that his wife, Mrs. Anderson, would not sign deed? Answer in dollars and cents.

"Special Issue Number Five: What, from a preponderance of the evidence, do you find was the reasonable market value in Gray County, Texas, per acre, of said section number 203, at the time defendant Anderson advised plaintiff Saulsbury that his wife, Mrs. Anderson, would not sign deed? Answer in dollars and cents per acre.

"Special Issue No. Six: What, from a preponderance of the evidence, do you find was the reasonable market value in Gray County, Texas, of the oil and gas lease on the southeast quarter of said section number 203 at the time defendant Anderson advised plaintiff Saulsbury that his wife, Mrs. Anderson, would not sign the deed? Answer in dollars and cents.

"Special Issue No. Seven: Do you find from a preponderance of the evidence that on the date said written contract between Saulsbury and Anderson, dated December 8th, 1927, was executed by said parties that plaintiff Saulsbury knew at that time that Mrs. H. M. Anderson would not sign a deed conveying said land to Saulsbury? Answer yes or no.

"Special Issue No. Eight: Do you find from a preponderance of the evidence that defendant, Mathers, at the time he bid in said section 203 on May 1st, 1928, knew of the existence of said contract of date December 8th, 1927, between defendant, H. M. Anderson, and plaintiff, W. B. Saulsbury, relative to the sale and purchase of said section number 203? Answer yes or no."

The jury answered special issue No. 1 in the affirmative, and in accordance with the instructions of the trial court, left the other special issues unanswered.

The plaintiff, appellant, presents this appeal under the following propositions:

"1. The undisputed evidence in this case being contrary to the verdict of the jury, it was improper for the Court to render judgment for the defendants upon such verdict.

"2. It appearing from the undisputed testimony in the case that the defendant Mathers was holding legal title to said property as trustee for one Polk Osborne, or for Mrs. H. M. Anderson, or for such person as might be designated by said Polk Osborne, and that said Mathers' legal title was not to become absolute title until three years after May 1st, 1928, and not then if he was repaid moneys advanced by him, together with interest, then it was improper for the court to render judgment for the appellee Mathers that he would recover against the other parties to the suit, the land in controversy.

"3. This being a suit upon the part of appellant for specific performance of contract to convey land involved, and a cross-action upon the part of appellee Mathers that his title be quieted, and it appearing according to the undisputed testimony that Polk Osborne and Mrs. H. M. Anderson were necessary parties to this suit, then it was fundamental error for the court to render judgment thereon in the absence of such necessary parties."

■ Appellant's first contention that the "undisputed" evidence is in face of and contrary to the jury's verdict, and that the trial court erred in rendering judgment for the defendants, cannot be sustained by us. If there is evidence to sustain the jury's finding that before the contract should become effective it was understood and agreed by Saulsbury and Anderson that Anderson's wife should sign the same, then we have no authority to set such verdict aside.

While the appellant contends that the evidence contradicting such finding is undisputed, the very evidence quoted by him in his brief establishes the fact that there is evidence, which, though disputed, sustains such verdict. The copy of the contract introduced in evidence, it is true, shows that Anderson alone signed it without any explanation set out in said contract as to why the wife did not sign it, or any statement that she was to sign it. However, the defendant Anderson testifies, apparently without objection, in substance and in part, as follows: "When I was in Mr. Saulsbury's office, you want to know what I said to Saulsbury and what he said to me and what Jamison said in the presence of both of us, with reference to this trade. I state that you will just have to ask the question and then I can tell it to you. As to whether I talked about the price of the land, I had already talked about the price and agreed on the price before I went in there. They wrote out the contract right there. As to whether I read it over, they read it over to me and he signed it and I signed it. * *- * I told them that I would go home and come back the next morning and bring my wife in and let her sign it and they said it was not necessary for her to sign the contract but that she would have to sign the deed. As to who it was that told me she would have to sign the deed, both of them told me that. I am sure that both Jamison and Saulsbury told me that my wife would have to sign the deed. As to whether there was anything else said about my wife having to sign the deed there than what I have detailed here, I state that I think that is about all that was said. * * * When this contract was entered into I told them that I would go home and come back the next morning and sign the contract and bring her in with me. . Mr. Jamison told me: 'No, Baker is on another trade and if you don't make it now, he won't make it at all. You have to sign now and that will hold him and then you can get your wife in here.' As to whether I went ahead and signed this contract after that statement was made by Jamison, that the contract could be signed then by me and it would not be necessary for my wife to sign it, but she would have to sign the deed, I state that he said she could come in the next morning and sign it; he said it was not necessary for her to sign the contract. That was what Jamison said. As to what Saulsbury said about it, I state that we were in Jamison's office at that time and Saulsbury was in there. Saulsbury told me that my wife would have to sign the deed. Saulsbury told me that in his office. There in Jamison's office, he said my wife would have to sign the deed and he said it was not really necessary for her to sign the contract. As to what else Jamison said there in his office about my wife signing the contract, I state that is about all he said, only he said it several different times. I kept trying to get him to let me go home and come back the next day. That was when I was talking to Jamison. When I had that conversation, the contract had not been written. As to whether I can account for the reason I talked about my wife signing the contract and not signing the deed, when the contract had not been written, I state that he was trying to get me to go in there and make the contract. Then I went in there, and made it later on. * * * I think I have got my copy of this contract at home if they have not got it here. I took a copy home that same night. I had signed both contracts and Saulsbury had to sign both contracts, and I took one home and he took one and I think there was another one that went to the bank. I signed all three of them and Saulsbury signed all three of them. The other one was supposed to be put in the bank. * * * After I had told either Jamison or Saulsbury that I would bring my wife in and sign the contract and I heard Saulsbury read that contract over to me, you want to know why I did not then and there tell him to write all of that into the contract and I state that I guess I just wasn't smart enough in a business way to have it done. That is the only way I can answer that. * * * As to whether my understanding of it was that she was to come in and sign something before there would be complete deal, I state that my understanding was she was to go in and fix up a deed the next day. It was the understanding that she was to come in and sign something before we had it completed."

This evidence being before the jury, and they having found that the contract was to have been signed by the wife, the trial court did not err in rendering judgment in favor of the defendants upon that finding. Hodde v. Malone Real Estate Co. (Tex. Civ. App.) 196 S. W. 347; Nowlin v. Hall, 97 Tex. 441. 79 S. W. 806; Mansfield v. Rigsby (Tex. Civ.

147

App.) 273 S. W. 290, 291; Northern Assurance Co. v. Lawrence (Tex. Civ. App.) 278 S. W. 476, 477; Turner v. Charbonneau (Tex. Civ. App.) 280 S. W. 848; Hughes v. Mayfield Co. (Tex. Civ. App.) 291 S. W. 571.

The verdict of the jury being supported by the evidence, it is immaterial, in Saulsbury's suit for specific performance or in the alternative for damages, whether Mathers was holding the title in trust or not. If Saulsbury's claim of right under the contract could give him any right to question Mathers' holding of the title, it could only exist by reason of the contract. This right was negatived when, under the evidence, the jury found that the contract was to have been signed by the wife before it became effective, and as she refused to sign it, there was no contract. The plaintiff not having a contract whose execution was complete and effective, he could not maintain his suit. In other words, not having a contract which he could enforce performance of, it was of no consequence whether Mathers held the absolute title or merely held it in trust. Further, the plaintiff having entered into a contract with Anderson with full knowledge that the homestead of Anderson and wife was located upon the land described in the contract, he was not entitled to penalize the husband and thereby force the wife to sign the deed conveying the land to him, including the homestead, when the plaintiff was charged not only with the knowledge of the facts as to the homestead, but also with knowledge that under the Constitution and laws of the state of Texas, he could not compel the wife to convey her homestead. This is true even if she had signed the contract, for she could repudiate the transaction up to the very time of the delivery of the deed from her and her husband. Knowing that he was not entitled, under the law, to compel the conveyance of the homestead as against her, plaintiff entered into an unenforceable contract. In the attempt, therefore, to enforce specific performance, plaintiff was at fault in the making of the contract, which not only defeated him in having the court to perform for him, but also deprived him of any right to recover damages. The jury's verdict settles the question, under the evidence, that there was no contract; the contingency of the wife signing never having occurred. This being true, the plaintiff not having established a contract, not only was he not entitled to specific performance, but it also deprived him of the right to recover damages.

Plaintiff based his action for specific performance, in part, upon the charge of conspiracy between Anderson and Mathers. But it is nowhere alleged that Osborne and Mrs. Anderson were parties to that conspiracy, and the plaintiff makes no attempt to make them parties to the suit, and they are not necessary parties to that suit under the allegations of his petition. In order that there may be a necessity of joinder of parties in a suit for specific performance of a contract, or for damages for the breach thereof, there must have been a joint liability under the contract. A stranger to a contract cannot be joined with the obligors in the contract, 47 C. J. 69, and the only parties necessary to the action are the parties to the contract. South Plains Coaches v. Behringer (Tex. Civ. App.) 4 S.W.(2d) 1003, 1007.

The agreement between Osborne and Mathers that Mathers should buy the land at the sale under the deed of trust, and when Osborne repaid Mathers the money he (Mathers) was to receive the money that he was out, plus interest, was without consideration and hence, not enforceable, even if Osborne was a necessary party otherwise. Again, it not being pleaded and proven by plaintiff that Osborne was deprived of any valuable right in being prevented from bidding at the sale, Osborne would have no standing in court in the absence of a money or property consideration, and such agreement could not be litigated in the action now before this court, and the trial court was not compelled to have Osborne made a party so that matters between him and Mathers might be litigated. Ward County Water Improvement District v. Ward County Irrigation District (Tex. Civ. App.) 237 S. W. 584. Especially is this correct when the plaintiff has shown that he had no interest in the contract between Osborne and Mathers, if there had been such as between them. This is held in view of our holding that the jury's finding precludes plaintiff securing equitable relief by way of specific performance. This also applies to the plaintiff's contention that the trial court should not have rendered judgment in favor of defendant Mathers upon his cross-action when the evidence showed that Osborne had the agreement set out with Mathers.

The evidence shows: First, that Saulsbury knew that the contract involved the homestead of the defendant Anderson; second, that Anderson's wife declined to sign either the contract or the deed; third, that Anderson offered to sign the deed; and, fourth, that Saulsbury refused to accept the deed signed alone by the husband, defendant Anderson.

In the case of Collett et ux. v. Harris (Tex. Civ. App.) 229 S. W. 885, where a broker, when he secured the husband and wife's contract to sell a lot, knew that it was their homestead and her separate property, the husband, who, although his wife refused to convey, was ready and willing to make the conveyance so far as he could, he was not liable in damages to the broker for his wife's failure to carry out his undertaking.

In the case of Finley v. Messer, 9 S.W. (2d) 756, 757, the Court of Civil Appeals at Waco, in passing upon the sufficiency of the

pleading to authorize a judgment therein rendered by the trial court, says:

"The pleadings allege that Mrs. Finley was the wife of R. E. Finley at the time the contract was executed, and that all the property was the separate property of Mrs. Finley, and that the contract was executed by Mr. Finley and his wife for the use and benefit of Mrs. Finley's separate estate. Our courts have uniformly held that an executory contract on the part of a married woman, which is made by herself or her agent, to sell her separate real estate or sell the homestead, is not enforceable, and that she has the right, after she signs a deed, to renounce the trade and refuse to carry it out at any time before she states to the officer taking her acknowledgment that she does not wish to retract it. Blakeley v. Kanaman, 107 Tex. 206, 175 S. W. 674; Maynard v. Gilliam (Tex. Civ. App.) 225 S. W. 818; Crabb v. Bell (Tex. Civ. App.) 220 S. W. 623; Blue v. Conner (Tex. Civ. App.) 219 S. W. 533; Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923.

"Our courts further hold that neither the husband nor the wife is responsible for damages for the failure of a married woman to comply with her executory contract for the sale of land, where the party at the time he makes the contract knows that it is the homestead or that it is the separate property of the wife that is to be conveyed. Collett v. Harris (Tex. Civ. App.) 229 S. W. 885; Griffith v. Watkins (Tex. Civ. App.) 279 S. W. 489; Jackson v. Carlock (Tex. Civ. App.) 218 S. W. 578; Graham v. Carmany (Tex. Civ. App.) 2 S.W.(2d) 467; Billingsly v. Swenson Land Co., 58 Tex. Civ. App. 67, 123 S. W. 194."

When the husband has attempted to sell the homestead and the wife refuses to sign, the purchaser may recover for the breach of the contract only the amount he has expended thereunder. Eberling v. Deutscher Verein, 72 Tex. 339, 12 S. W. 205. Where the vendor, the husband, acts in good faith and without fraud on his part and is unable to convey good title by reason of the property being the homestead, the purchaser is not entitled to recover damages for the loss of his bargain, but only such amount as he has advanced on the faith of the contract, plus interest. Cross v. Freeman, 22 Tex. Civ. App. 299, 54 S. W. 246; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105. See also Dobson v. Zimmerman, 55 Tex. Civ. App. 394, 118 S. W. 236.

One of the reasons given for the holding that the purchaser can only recover what he has expended is that, as the contract is void, to allow damages to be recovered would indirectly tend to defeat the object of the homestead statute. Silander v. Gronna, 15 N. D. 552, 108 N. W. 544, 125 Am. St. Rep. 616.

While we are of the opinion that our holding that the jury finding discussed under the first proposition controls the disposition of the case, lest we have erred in that holding we have discussed other questions arising in the case as indicated above.

Finding no reversible error, we affirm the judgment of the trial court.